### The Sea Insurance Company *vs.* Fowler and others.

Where an *insurance* was effected at New York on goods laden or to be laden on board the *brig Abeona*, from one port to another, and the goods were shipped in a vessel called the *Abeona*, which subsequently was lost, and it appearing that there where two vessels frequenting the port of New York called *Abeona :* one a *brig*, and the other a *schooner, half brig, brigantine* or *hermaphrodite brig*, and that the goods were embarked in the latter vessel, *it was held*, that *without proof* that the vessel in which the goods were laden was in the contemplation of the parties at the time of the contract, there was no room for the presumption that the parties meant a different vessel from that described in the policy.

Error from the superior court of the city of New York. *Fowler and others* brought an action against the Sea Insurance Company, on a policy dated 28th October, 1835, by which the defendants insured goods and merchandizes valued at $3000, laden or to be laden on board the good *brig Abeona,* at and from New York to Newfoundland.    The goods were shipped at New York, in a vessel called the *Abeona*, which was lost on the voyage to Newfoundland.    In the protest made by the master and one of the seamen, the vessel was uniformly called a *schooner*.    The plaintiffs, after reading certain admissions and the protest, rested the case, and the defendants moved for a nonsuit, on the ground that it appeared by the policy that the cargo was insured on board the *brig* Abeona, and it appeared by the protest that the

*schooner* Abeona was lost. The plaintiffs then called a witness who testified that they shipped a cargo to Newfoundland by the vessel Abeona, the vessel that was lost; that she was an *hermaphrodite brig*, and was lying in New York at the time the insurance was effected; that there was no *schooner* Abeona in port at that time; that this was a colonial vessel, and vessels of her construction were in the colonies sometimes called *schooners*, and sometimes *brigs*. *W. Newcomb*, inspector of the New York Marine Insurance Company, said he had described this vessel in his book as an *half brig*, *brigantine* or *hermaphrodite brig*, being a brig forward and a schooner aft; that she was not an uninsurable vessel, but the company did not like to insure her; they take risks freely on cargoes in vessels of that class. Two other witnesses testified that she was an *hermaphrodite brig*, and *C. Holmes*, inspector of the Union Insurance Company, testified that she was a *half brig*.

On behalf of the defendants, their secretary testified that the plaintiffs on the 16th October, 1835, applied in writing to the defendants for insurance on goods valued at $1000, per the British *schooner* Abeona from St. Johns to New York; this was on the voyage to New York. The defendants had not inspected, and knew nothing about the vessel, but insured on the representation of the plaintiffs that she was a fair vessel. On the 28th October, 1835, the plaintiffs applied in writing for insurance on the *brig* Abeona from New York to Newfoundland, and the policy in question was issued. When the last mentioned application was made, the defendants' inspector was not in, and the president referred to the books to see how the vessel stood, but she was not on the books of the company. As the amount was considerable, and the prejudice against British vessels was great, the president went to the *Atlantic* office, and on his return agreed to take the insurance in consequence of the information he received. *S. G. Waring*, inspector of the *Atlantic* company, testified that there are two vessels called the *Abeona*, both British; that one is a *brig*, the other a *schooner*; that the *brig* was considered

a good vessel for a British vessel, and the *schooner* was a poor vessel; he should not consider her as insurable; is entered so in the books; he recommended his company not to insure her. The witness had seen and examined both vessels in New York. That the vessel in question in this action was the *schooner;* she was a top sail schooner, not an *hermaphrodite brig;* she was a *schooner* in every sense of the word, as witness understands it. That British schooners very often resemble brigs. There is a difference between an hermaphrodite brig and a schooner, but a casual observer would be apt to mistake one for the other.

The defendants offered to prove that their president on his return from the *Atlantic* office had the *brig* registered in the books of the company as an *insurable* vessel, and the *schooner* as an *uninsurable* vessel, and the one as a *brig*, and the other as a *schooner.* This evidence was rejected, and the defendants excepted.

The chief justice charged the jury, " that the application for insurance, described the vessel as the *brig Abeona*, and if she was in fact a brig, then there was no misdescription of her; if, however, they should be of opinion that she was a *schooner* and not a brig, or if from her build or manner of being rigged, the appellation of brig could not be applied to her, but was a misdescription of her, and if such misdescription was material to the risk, and the defendants were misled by it, and induced to take a risk greater than the one which they contemplated and intended to take, and which they otherwise would not have taken, they should find a verdict for the defendants ; but if she was a brig, or if that appellation of her was a misdescription, and such misdescription was not, under the circumstances of the case, material to the risk, then they should find for the plaintiffs. The defendants excepted ; and the verdict and judgment having passed against them, they now bring error.

*A. G. Rogers*, for plaintiffs in error.

*R. J. Dillon*, for defendants in error.

*By the Court,* BRONSON, J. Upon the evidence, there were two British vessels of nearly the same capacity, both named *Abeona,* and both having been in the port of New York The one was a *brig,* and the other was either a *schooner* or a *half brig, brigantine* or *hermaphrodite brig.* The very decided opinion of the witness Waring, that this vessel was a *schooner,* is pretty strongly confirmed by the fact that the plaintiffs had so designated her in their proposals for insurance on the voyage from St. Johns, and by the further fact that she was called a schooner by the master and one of the seamen in their protest after the loss. None of the witnesses call her a brig proper, but several of them think her a half brig, or a brig forward and a schooner aft. The brig was a *good* vessel, and the schooner or half brig a *poor* one—the one was *insurable,* the other according to *Waring,* was *not* insurable. Newcomb, the only other witness who speaks to the point, says this was not an insurable vessel, *but his company did not like to insure her.* The brig was undoubtedly a much better risk for the insurers than the schooner or half brig.

But independent of the difficulty growing out of the increased risk, I am unable to say that the policy ever attached. The insurance was on goods laden or to be laden on board the *brig* Abeona ; the vessel lost, and on board of which the goods were laden, was the *schooner* or *half brig* Abeona. It was a different ship from that mentioned in the contract. This is not the case of a simple misnaming or other misdescription of a particular vessel, about which the parties intended to contract, and where, notwithstanding the mistake, the subject can be sufficiently identified. See *Le Mesurier* v. *Vaughan,* 6 East, 382, and the case there cited by Lawrence, J. of *Hall* v. *Mollineaux.* 1 Phillips' Ins. 64, § 1. 1 Marshall (Condy's) Ins. 314. Here there were two vessels of the same name, but of different species. The policy describes with accuracy one of the vessels, and not the other. In such a case, there is no principle which will authorize us to presume, *without proof,* that the parties meant a different vessel from that described in the contract. A change of the ship, made without necessity or the consent of the insurer, will

Sea Ins. Co. v. Fowler.

avoid the policy, although there may be no increase of the risk. 1. Marsh. Ins. 166, 312. The parties are only bound by their contract.

Although the *schooner* or half brig Abeona was in port at the time the insurance was made, there is no proof that the underwriters knew that fact, or that they knew that the *brig* Abeona was not also in port at the same time. There is not only the absence of any just ground for inferring that the defendants intended or were willing to insure on the schooner, but the evidence furnishes ground for the contrary inference. The application was for insurance on the cargo of the *brig* Abeona. The defendants seem not to have known any thing about the vessel. Their inspector was not in, the vessel was not on their books, and the president went out to make inquiries. He went to the office of the Atlantic company, and on his return agreed to take the risk. If he examined the books of the Atlantic company, he found that there was both a *brig* and a *schooner* called Abeona; that the brig was a good vessel, and the schooner a poor one; that the one was considered insurable, and the other not. If, without consulting the books, he inquired of the officers of the Atlantic company, he probably obtained the same information. There is then reason for believing that the defendants not only supposed they were insuring on the brig, but that they would not have consented to take a risk on the vessel which was lost. But it is enough that the contract relates to one vessel, and the goods were shipped by another. It is for the plaintiffs to show, if that can be done, that although the brig was mentioned in the policy, the schooner or half brig was the vessel about which the parties intended to contract.

It follows, I think, from what has been said, that the case was not properly submitted to the jury, and that the exception to the charge was well taken.

Judgment reversed.