## PACIFIC MUT. LIFE INS. CO. v. SNOWDEN.

### (Circuit Court of Appeals, Eighth Circuit. October 2, 1893.)

### No. 242.

1. ACCIDENT INSURANCE—APPLICATION—CLASSIFICATION OF RISK—REPRESENTATIONS OF AGENT.
    Where an applicant for insurance against accident makes a true and full statement of his occupation to the company's agent, the company is bound, after loss, by the classification which the agent gives him; and if he is wrongly classified, according to the company's rules, the fact that he certifies to an understanding of the company's classification of risks, and that he belongs to the class given, is immaterial, when in fact his only means of understanding such classification is through the representations of the agent.

2. SAME—ACTION ON POLICY—EVIDENCE.
    A cattle dealer, insured under an accident policy which permits him to attend his cattle in transit on the cars, can rightfully do, on such a trip, whatever is customary among reasonably prudent cattle dealers under like circumstances; and, in an action on the policy for injuries received while looking after his cattle at a way station, it is not prejudicial error to permit him to show what is the common practice among cattle dealers.

3. APPEAL—REVIEW—SUFFICIENCY OF EVIDENCE.
    The sufficiency of the evidence to sustain the verdict is not reviewable in federal appellate courts, unless defendant asked a peremptory instruction for a verdict in his favor at the close of the whole evidence.

In Error to the Circuit Court of the United States for the District of Nebraska.

At Law. Action by Andrew J. Snowden against the Pacific Mutual Life Insurance Company upon an accident insurance policy. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

Statement by CALDWELL, Circuit Judge:

On the 19th day of June, 1889, Andrew J. Snowden, the plaintiff, who was then engaged in the business of buying, shipping, and selling cattle, made application to the defendant, the Pacific Mutual Life Insurance Company, through its agent at Grand Island, Neb., for an accident policy of insurance

for the sum of $10,000, to run 90 days. A policy in the usual form was issued, and the plaintiff paid the premium of $50. By the terms of the policy, if the assured suffered the loss of a hand, one-third of the principal sum of the policy was to be paid him. On the 15th day of September, 1889, the plaintiff, in the prosecution of his business as a cattle dealer, shipped at Cushing, Neb., to Chicago, by the way of South Omaha, over the Burlington & Missouri River Railroad, several car loads of cattle, and took passage himself, by the same train, for the purpose of looking after and caring for his cattle during the transit. The plaintiff's cattle were in cars near the head of the train, which consisted of 39 cars. The caboose in which he rode was the last car in the train. At Seward, Neb., the train stopped about 12 o'clock, midnight, to take water; and, being told by the conductor that he would have time to look after his cattle, the plaintiff got out of the caboose with his prod pole, and proceeded to within three or four cars of the engine, where he found one of his steers down, and immediately set about getting him up, in the customary method. Before he had completed his work, the engineer sounded the signal, "off brakes," and realizing that he was so far from the caboose that, before he could get to it, the train would be under such headway that he could not get on, he started to climb up on the iron ladder attached to such cars for the use of the train crew, stock men, and others having the right and occasion to use it, intending to climb to the top of the car, and remain there until the next station was reached. But just as he was in the act of reaching the top of the car, and was still holding on to the iron ladder, a "helping engine" at the rear of the train pushed the cars with such suddenness and force as to break the plaintiff's hold upon the ladder; and he was thrown down between the cars, and his left hand cut off, or so mangled that it had to be amputated.

The answer contained a general denial, and set up, as special defenses: First. That the plaintiff did not use due diligence for his personal safety and protection. Second. That his injury resulted from, or was attributable to, the plaintiff's voluntary exposure to unnecessary danger. Third. That he violated the rules of the railroad company in getting on the cattle car while it was in motion, which avoided the policy. And, fourth, that the defendant has a classification of occupations, in which they are variously classed as "preferred," "ordinary,"' "medium," "special," "hazardous," "extra hazardous," "special hazardous," and so on, and that the rate of insurance and the amount of the policy, under the rules of the company, is determined by the classification of the applicant's occupation, and that the plaintiff, in his application for insurance, made this statement: "My occupations are fully described as follows: Cattle dealer or broker, not tender or drover, not on farm or ranch,"—and that he also stated that: "(6) The class or risk under my application is preferred." That by the terms of the policy these statements were made warranties, and that they were false, in this: that the defendant's classifications of persons engaged in shipping or dealing in cattle was as follows:

### "Classification.

| Occupation. | Class. |
| --- | --- |
| Cattle shipper and tender, in transit | Ex. haz. |
| Cattle dealer or broker | Med. |
| Cattle dealer or broker, visiting yards | Med. |
| Cattle dealer or broker, not tender or drover, not on farm or ranch | Pref." |

—That the plaintiff had described his occupation in his application as "Cattle dealer or broker, not tender or drover, not on farm or ranch," and the class of risk as "preferred," when he should have described his occupation as "Cattle shipper and tender, in transit," and the risk as "extra hazardous."

There was a trial before a jury, and a verdict and judgment for the plaintiff for $3,958.73, and the defendant sued out this writ of error.

Charles O. Whedon, for plaintiff in error.
H. M. Sinclair, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The defendant had a traveling and local agent in Nebraska. Some time before the plaintiff took out the policy in suit, he obtained from one of these agents an accident policy for $5,000. The application for that policy and the policy were identical in terms with the application and policy in this case, save in amount. When the first policy was taken out, the defendant's agent Davis testified that the plaintiff asked the question—

"Whether, under that contract, he would be insured if he should go with his cattle to the market, and I told him he would be insured under the contract, as I understood it; that he went along just occasionally, like I sometimes do. That he was insured as he was doing business. That if he changed his occupation, however, under the contract, it would be pro rata."

In answer to a question whether the witness told the plaintiff that he had a right to go with his own cattle to market, he answered:

"Yes, sir; of course, cattle shippers— That is their business, all the time, to be on the road with cattle, and occasionally a cattle dealer or broker goes to the yard. The policy allows traveling by any usual means of conveyance, and I called his attention to that; and I said, 'Certainly;' that he would be insured under that contract. He said that he generally had a shipper, but sometimes, occasionally, he went himself with the cattle,—may be, a dozen times a year; and I knew that was so, without him telling me, because I had been on the road many times with cattle previous to that. And he said, if that did not cover that, he would rather pay more, and be sure to have the policy that did cover it; and I held that covered the case; and I told him that covered the case."

Both agents were present when the policy in suit was applied for and issued, and agent Davis testifies that:

"Mr. Snowden recited to Mr. Limback, just about as he did to me, that he questioned in his own mind if he would be insured, in case of an accident, if he was accompanying his cattle; and Mr. Limback said he would be insured, in going with his cattle."

The book containing the company's classification of risks was not shown to the plaintiff, and it appears that he had no knowledge of such classification, other than that which was communicated to him by the defendant's agents, who in each instance wrote out the applications, and with full and exact knowledge and information as to the plaintiff's occupation, and the manner in which he pursued it, described his occupation as it appears in the application, and also stated therein that the class of risk for the assured's occupation was "Preferred." An objection to the foregoing testimony was overruled, and that ruling is assigned for error.

The contention of the company is that, under the description of the plaintiff's occupation in the application, he was not insured while going with his cattle, and caring for them, when taking them to market, and that the assurance given to the plaintiff by defendant's agents at the time the policy was issued, to the contrary,

does not bind the company. The book said to contain the defendant's definition and classification of different occupations, with the rate of premium established for each, is published by the defendant for its own use, and furnished to its agents for their information and guidance. Neither the book, nor any portion of its contents, is carried into the application or policy, or even referred to. How applicants for insurance are to possess themselves of knowledge of the contents of this book, or, indeed, that there is any such book, does not appear. The agent testifies that this book, so far as he knows, was never shown to the plaintiff. When the plaintiff applied for insurance, he could do no more than state fully and truthfully what his occupation was, and what he did in the pursuit of it, and leave it to the agent to classify the risk, and fix the rate of premium. This is precisely what was done. There is no claim that the plaintiff did not give full and exact information as to what his occupation was, which the agent says was already known to him. Upon these facts, the description of the plaintiff's occupation made by the agent, and the classification of the risk thereunder, and the assurance given the plaintiff that his policy covered injuries received while accompanying his cattle to market, bind the defendant as effectually as if these representations and assurances had been written into the policy. But it is said the plaintiff states in his application for the policy that "I understand this company's classification of risks. ＊ ＊ ＊" How did he understand it? Certainly, not by intuition. He had no book. His understanding of it, then, must have been acquired from the representations made to him by the defendant's agents. Under such circumstances, the classification of the risk, so far as related to the policy in suit, must be such as these agents represented it to be when the plaintiff purchased the policy, and not what it may appear to be according to a classification made by the defendant' which was not shown to the assured, and of which he was ignorant. In many cases the insured is required to state facts respecting the risk within his own knowledge, and in such cases he must state them truly; but where he states them truly, and the insurance agent writes them down differently, the assured is not prejudiced thereby. And the rule is the same where he answers a question or makes a statement about a matter peculiarly within the knowledge of the insurance company, and his answer or statement is dictated by, or based upon information derived from, the company's agent. The time has long since passed, in this country, when an insurance company can perpetrate a fraud upon the assured by accepting the premium, and, when the loss occurs, avoid its payment upon the ground that its agent varied from his private instructions, or misinterpreted them, or exceeded his authority in a matter in which the company had held him out to the public as having authority. Within the apparent scope of his authority, acts and assurances of the agent are the acts and assurances of the company itself. In 2 Amer. Lead. Cas. (5th Ed.) 917, the learned author states the rule as follows:

"By the interested or officious zeal of the agents employed by the insurance companies, in the wish to outbid each other and procure customers,

they not unfrequently mislead the insured by a false or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy. The better opinion seems to be that when this course is pursued the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers."

This statement of the law is quoted approvingly, and emphasized, by Mr. Justice Miller, in delivering the unanimous opinion of the supreme court in the case of Insurance Co. v. Wilkinson, 13 Wall. 222, 235, 236. This is now the accepted doctrine. Eames v. Insurance Co., 94 U. S. 621; Insurance Co. v. Baker, Id. 610; Insurance Co. v. Mahone, 21 Wall. 152. The cases in the state courts which support the rule here laid down are too numerous to require or justify citation.

According to the testimony of the defendant's own agent, the plaintiff's policy describes, and was intended to describe, his occupation as precisely that in which he was engaged when he received his injury; and he classed, and intended to class, the risk of such occupation as "Preferred." The assured paid for the policy on the faith of the correctness of the agent's description of his occupation and classification of the risk; and the law will not permit the company, after an injury has occurred, to change the definition of the plaintiff's occupation, and the classification of the risk, to his prejudice. The company is bound by the terms of the contract, as it was understood and entered into by its agent with the assured.

It is assigned for error that the court admitted testimony to show that cattle dealers commonly accompanied their cattle to market, and gave them that care and attention the plaintiff was giving to his cattle at the time he received his injury. The plaintiff having, by the terms of the policy, as it was explained and interpreted by the defendant's agent, the right to accompany his cattle to market, the defendant was not prejudiced by the proof that this was the common practice of cattle dealers, for the plaintiff had that right under his policy, independently of a custom or common practice to that effect.

In the matter of accompanying his cattle to market, and caring for them while in the course of transportation, the plaintiff could rightfully do whatever was customary with other cattle dealers under like circumstances and conditions. The plaintiff had a right, if it was not his duty, to incur all the risk and danger incident to caring for and looking after his cattle in the cars, while en route to their destination, in the time and manner customary among reasonably prudent and careful shippers, and such risks and dangers, no matter how great they are, do not constitute any violation of the provisions of the policy requiring the plaintiff to use due diligence for his personal safety and protection. Nor is the incurring of such risks and dangers a voluntary exposure to unnecessary danger, within the meaning of that clause in the policy. Whether the assured, at the time he received his injury, was engaged in doing something outside of the occupation covered by his policy, or whether, though in the pursuit of an occupation covered

by the policy, he exposed himself to unnecessary danger, and did not exhibit due regard for his personal safety, such as an ordinarily prudent man, charged with the same duty, and placed in like circumstances, would have done, were questions of fact for the determination of the jury. We are asked to review their finding, but as the defendant did not ask a peremptory instruction, at the close of all the evidence, for a verdict in its behalf, we cannot consider the question whether the verdict of the jury was warranted by the testimony. The truthfulness of the agent's testimony was not questioned. Its competency and legal effect, only, were disputed. In view of the legal effect of the facts testified to by the agent, the court did not err in telling the jury that, if the plaintiff was entitled to recover at all, his recovery should be for one-third of the principal sum of the policy, that being the amount fixed by the terms of the policy for the loss of a hand.

Finding no error in the record, the judgment of the circuit court is affirmed.