## AMERICAN EMPLOYERS' LIABILITY INS. CO. v. BARR.

(Circuit Court of Appeals, Eighth Circuit. June 3, 1895.)

### No. 530.

1. PLEADING.

   An answer to an action on an accident insurance policy which attempts to set up that the contract was not fully consummated, because requiring the assent of the home office to the acts of an agent, but which shows that the agent was placed in a position to deliver a completed policy, and did so, and does not aver knowledge by the insured of the excess of authority, and which also attempts to set up concealment of material facts, and false representations, but states no particulars, is insufficient.

2. LIFE INSURANCE.

   A policy of accident insurance provided that the company's medical adviser might examine the body of the insured at any time. No request was made for an examination till some weeks after the insured's burial, when a request was made, not to the beneficiary, but to decedent's widow, and was refused. *Held* no defense to an action by the beneficiary.

3. SAME.

   C. took out a policy of accident insurance on his own life, paying the premium thereon, the benefits of which were payable to himself, unless he sustained an accident which resulted fatally, in which event the sum due on the policy was directed to be paid to B., the nephew of the insured. In an action by B., C. having sustained an injury which resulted in death, *held*, that B. need not allege or prove an insurable interest in the life of C.

In Error to the Circuit Court of the United States for the District of Colorado.

This was an action by William P. Barr against the American Employers' Liability Insurance Company on a policy of insurance. The plaintiff recovered judgment in the circuit court. Defendant brings error. Affirmed.

*James H. Brown and Milton Smith* filed brief for plaintiff in error.
C. S. Thomas, Charles Hartzell, W. H. Bryant, and H. H. Lee filed brief for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This writ of error was sued out by the American Employers' Liability Insurance Company, the plaintiff in error, to reverse a judgment which was recovered against it in the circuit court of the United States for the district of Colorado on an accident policy of insurance. The material provisions of the policy are as follows:

"The American Employers' Liability Insurance Company, * * * in consideration of the warranties made in the application for this policy, and of thirty dollars, does hereby insure William P. Cousley, * * * residing in Denver, county of Arapahoe, and state of Colorado, by occupation a contractor (classified by the company as ordinary), for the term of twelve months, ending on the sixth day of May, eighteen hundred and ninety-three, at 12 o'clock noon: (1) In the sum of five thousand dollars, against death resulting from bodily injuries effected during the term of this insurance through external, violent, and accidental means, which shall, independently of all other causes, result in death within ninety days from the happening thereof. (2) If such injuries shall, within three calendar months from the date of his sustaining the same, be the direct and sole cause of the loss, by actual separation at or above the ankle or wrist, (of) both feet or of both hands, or of one hand and one foot, or the irrecoverable loss of the sight of both eyes, the company will pay to the insured, if he survives the same, the full amount of the principal sum of this policy ($5,000), which payment shall terminate the policy. (3) If such injuries shall be the sole cause of the loss within three calendar months, by actual separation at or above the ankle or wrist, of one hand or one foot, the company will pay to the insured, if he survives the same, one-half of the principal sum of this policy ($2,500), which payment shall terminate the policy. (4) If such injuries shall immediately and wholly disable and prevent him from prosecuting any and every kind of business pertaining to his occupation above stated, and does not cause the loss of limbs or eyes as above, the company will pay to the insured a sum not exceeding twenty-five dollars per week for loss of time, and not exceeding fifty-two consecutive weeks. In case of death under the provisions of this policy, the company will pay the principal sum to W. P. Barr, his nephew, if surviving; in event of his prior death, to the legal representatives of the insured: provided, further, that in case of death resulting from injuries wantonly inflicted by the insured, or inflicted and caused by him while insane, the measure of this company's liability shall be a sum equal to the premium paid, the same being agreed upon as in full liquidation of all claims under this policy."

The insured sustained certain injuries on May 20, 1892, by falling from a platform in a building which was in process of construction in the city of Denver, and died four days thereafter, as it is claimed, from injuries resulting from such fall. A suit was brought on the policy by William P. Barr, the defendant in error, to whom, under the aforesaid provisions of the policy, the same was made payable in the event of the death of the assured, and a judgment was recovered against the defendant company for the sum of $5,626.58.

One of the principal errors assigned is the action of the trial court in sustaining a demurrer to the second defense which was pleaded by the defendant company. That defense was, in substance, as follows: The defendant averred that it held itself out as insuring preferred or selected risks in professional and mercantile classes,

and that it did not hold itself out as insuring persons while actually engaged in extrahazardous employments, such as "supervising contractor," in which employment Cousley appears to have been engaged when he was injured; that at the time the policy in suit was issued one Francis A. Chapman was its duly-authorized agent to solicit insurance in its behalf in the state of Colorado, "subject to and in accordance with the instructions, terms, and conditions contained in applications for insurance, prospectuses, and insurance policies, and business forms, and regulations adopted and prescribed by the board of directors and the president, secretary and general manager, at the office of the said defendant company in the city, county, and state of New York, and that said Chapman was not authorized to waive, change, or modify any of said terms or conditions in said applications for insurance, prospectuses, insurance policies, and business forms and regulations adopted and prescribed by the board of directors, or the president, secretary, or general manager, at the office of the said defendant company in the city of New York"; that the defendant company, for the purpose of carrying on its business in the state of Colorado, within the limitations aforesaid, "furnished its said agent, Francis A. Chapman, with printed blanks and other stationery reasonably proper and necessary to carry on and conduct said business"; that on May 6, 1892. William P. Cousley made a certain written application to its said agent, Chapman, for an accident policy of insurance, which application was set out in full in the answer; that, according to the established mode of doing business, it was the duty of said Chapman, on receipt of said application, to transmit the same to its branch office in the city of Chicago, and thence to its general office in the city of New York; that said application was so transmitted, but that it failed to reach New York until after the assured had sustained the injuries on account of which he ultimately died; that the statements made by the assured in said application were not "full, specific, and certain"; and that on July 28, 1892, the defendant company tendered to Cousley's administrator the premium of $30, which it had theretofore received, "for the purpose of rescinding the said contract, because of the incompleteness of said alleged contract, and for breach of warranty, in making insufficient, incorrect, and incomplete answers to the questions stated in said application for insurance, as well as concealment of material facts called for by said questions, and also for other good and sufficient reasons."

It is somewhat difficult to comprehend the precise nature of the defense intended to be stated in the foregoing paragraph of the answer. We shall assume, however, that the defendant company intended to make two defenses: First, that the contract was not fully consummated in the lifetime of the assured; and, second, that, if fully consummated, the assured was guilty of such a concealment of material facts, or made such false representations, as rendered the contract voidable at the election of the company. Conceding, for the purposes of this decision, that it was proper to plead both of the aforesaid defenses in a single paragraph of the answer, and that it was not necessary to state the defenses separately, still we think

that neither of them was well pleaded. It is clearly shown by the plea aforesaid, and by other portions of the answer as well, that Chapman was the duly-authorized agent of the defendant company to solicit insurance in its behalf in the state of Colorado; that he was provided with such policies, applications, and other printed blanks as were necessary to conduct an insurance business; that he accepted Cousley's application for insurance, executed and delivered the policy, and received the premium thereon for one year's insurance. This made the negotiation complete. If Chapman disobeyed secret instructions which he had received from the company, or if he departed from the usual and ordinary course of business, in delivering the policy and in collecting the premium before Cousley's application had been received and had been approved by the home office in the city of New York, the assured cannot be prejudiced by such misconduct on the part of the company's agent. It has been decided, time and again, that when an insurance company appoints an agent to solicit risks, and provides him with printed forms of its policies, duly signed and sealed by the proper officers of the company, it will be bound by a policy which the agent sees fit to countersign and deliver, unless the assured has notice, when the policy is delivered, that the agent is exceeding his powers or is violating his instructions. Authority to solicit risks for and in behalf of a company, coupled with possession of its printed forms of applications, and policies duly signed and sealed, vests the agent thus equipped with an apparent authority to make a binding contract of insurance without any further approval of the risk by the company. Insurance Co. v. Wilkinson, 13 Wall. 222, 234, 235; Insurance Co. v. Snowden, 7 C. C. A. 264, 12 U. S. App. 704, 58 Fed. 342; Insurance Co. v. Robison, 7 C. C. A. 444, 19 U. S. App. 266, 58 Fed. 723, and cases there cited. In the present case there was no averment in the answer that Cousley had notice that his policy would not take effect until his application was approved by the home office, nor was there any averment that he was acquainted with a mode of doing business on the part of the defendant company which necessitated an approval of the application by the home office before the contract became complete. He had a right to presume that the contract took effect when the policy was delivered to him and the premium was paid, and that Chapman was authorized to accept the risk and execute the contract.

The second defense above mentioned, which is suggested by the answer, is equally without merit. If the assured concealed any material fact which he should have made known to the company, or if any warranty was broken, the plea interposed fails to show what material fact was so suppressed, or what warranty, if any, was broken. Cousley's application for insurance, which is set out in full in the pleadings, seems to contain full and specific answers to all of the questions which the company saw fit to propound, and, if any of the answers so made were false, the fact is not averred in the plea. Among other things, the assured described his occupation as being that of "supervising contractor," and it was while following that occupation that he sustained the injuries which are alleged to have occasioned his death. Moreover, the company's prospectus shows

that it made a practice of insuring builders, masons, and contractors. Without pursuing the subject at any greater length, it is sufficient to say that the "second defense," so termed, which the company attempted to make, was not well pleaded, and the demurrer thereto was properly sustained.

It is further assigned for error that the court erroneously instructed the jury with reference to the right of the defendant company to exhume and examine the body of the assured after his death. The facts pertinent to a proper understanding of the merits of that contention are as follows: The policy sued upon contains the following provision, to wit: "Any medical adviser of the company shall be allowed to examine the person or body of the assured, in respect to any alleged injury, as often as he requires." On the morning after the assured died, notice of his death was given to Francis A. Chapman, the company's agent, at his office, in Denver, Colo., by the present plaintiff, William P. Barr. The agent was asked on that occasion by Mr. Barr what should be done in reference to the matter, and what proofs, if any, should be furnished. To this inquiry the agent replied that nothing would be necessary, except to obtain a letter from the attending physician. A full statement of the cause of Cousley's death was subsequently made by the attending physician, and the same was delivered to the company, together with other proofs of his death, and proof of the nature and character of the injuries which he had previously sustained. Some three or four weeks after the deceased had been embalmed and buried, an application was made by the defendant company, to the widow of the deceased, for leave to exhume and examine the remains of her deceased husband, and such permission was by her denied. Under these circumstances the circuit court instructed the jury, in substance, that the demand for an autopsy was not made within a reasonable time. We are of the opinion that, if the defendant company intended to rest its defense to this action on the ground that it was denied the right to examine the body of the deceased, it should at least have shown that it sought permission from the plaintiff to make such an examination when it was within his power to comply with the request. There is no evidence in the present record tending to show that the plaintiff refused to allow the body of his deceased uncle to be examined on any occasion, either prior to or subsequent to its interment, or that it was within his power to allow the body of the deceased to be exhumed and examined when such a request was preferred. For this reason, if for no other, we think that the exception to the charge last above mentioned is without merit. The company certainly could not defer its request for leave to examine the body of the deceased until it was beyond the plaintiff's power to afford the company that privilege, and then plead the denial of the privilege as a defense to the action.

The remaining assignment which we deem it necessary to notice relates to a portion of the charge whereby the court instructed the jury, in substance, that the plaintiff, William P. Barr, had the right to recover on the policy without proof of an insurable interest in the life of his deceased uncle. It will be observed that the policy in

suit was taken out by Cousley, that the premium was paid by him, and that the indemnity promised in case of injuries not resulting in death was made payable to Cousley; in other words, the contract was made by Cousley with the insurance company for his own benefit. Barr was named as the person to receive and receipt for the amount due on the policy only in the event that the assured sustained injuries which resulted in his death. Whether Barr was a creditor of his uncle, or whether the deceased intended that Barr should receive and retain the amount paid on the policy as a gratuity, or should collect it as trustee, for the benefit of the assured's wife and children, was not expressly stated in the policy, and was not proven on the trial. We are of the opinion, however, that it was not necessary to allege or prove either of these facts. The insurance was obtained by the deceased on his own life, obviously for his own benefit. He had the right to designate the person to whom the indemnity should be paid in case of an injury resulting in death, and having done so, and the company having agreed to pay the indemnity to the person thus designated, it cannot now insist that such person shall prove an insurable interest in the life of the deceased, as a condition precedent to a recovery. The policy sued upon is not a wager contract, but was valid when made, and is still valid, even if it be true that Barr is not a creditor of the deceased. Olmsted v. Keyes, 85 N. Y. 593, and cases there cited. The record in the case discloses no error, and the judgment of the circuit court is therefore affirmed.