## D. M. ROSE & COMPANY v. R. S. DYSART et al.

En Banc. May 23, 1928.

Petition for Certiorari denied by Supreme Court, September 29, 1928.

326

Lindsay, Young & Young, of Knoxville, for appellant.
J. Bailey Wray, of Knoxville, for appellee.

FAW, P. J. · R. S. Dysart, a building contractor at Knoxville, under a contract with W. H. Sterchi, built for him an apartment house on his (Sterchi's) lot in Knoxville. He failed to pay the bill of D. M. Rose & Company, amounting to $455.53, for materials furnished and used in the building, and said D. M. Rose & Company instituted this suit against Dysart and Sterchi to enforce its lien.

Sterchi filed a cross-bill against Dysart and the New York Indemnity Company, alleging that the former had executed an indemnity or contractor's bond with the latter as surety obligating Dysart to pay for all materials, etc. The cross-bill prayed for a judgment or decree against Dysart and said Indemnity Company for any amount which Sterchi or his property might be held liable for to Rose & Company, and for the costs of the cause. Dysart filed a plea of bankruptcy, and the Indemnity Company filed an answer denying that it executed the bond.

The Chancellor decreed in favor of Rose & Company—the total amount of the decree being $476.77, and costs—and then rendered judgment over on the cross-bill in favor of Sterchi and against said New York Indemnity Company for said sum of $476.77, and the costs of the cause. The New York Indemnity Company has appealed to this court and has assigned error making the question that W. H. Wilson who signed its name and fixed its seal to the bond did not have authority, either real or apparent, to bind it and, therefore, that the Chancellor was in error in decreeing against it.

The finding of the Chancellor on the question was as follows:

"First, That the cross-defendant, New York Indemnity Company executed a bond as surety for R. S. Dysart indemnifying the said W. H. Sterchi in the sum of $9,000 against any loss sustained by reason of said Dysart not paying for the labor and materials used in the erection of the building in question, and that the seal of the said New York Indemnity Company was attached to the said bond.

"Second, That W. H. Wilson, the agent who executed said bond for and on behalf of the said New York Indemnity Company, was the one who actively solicited the sale of bonds for the New York Indemnity Company in Knoxville, Tennessee, and who maintained an office therefor, and who received, or should have received, the commissions for the sale of any such bonds. That the said New York Indemnity Company placed its agent, W. H. Wilson, in such a situation that a person of ordinary prudence was justified in assuming that such agent was authorized to execute said bond on behalf of the principal, and that the premium for said bond was paid to W. H. Wilson, agent. That the said W. H. Sterchi or any one representing him had no notice of any limitations of the powers of the said W. H. Wilson relative to the execution of said bond.

"The court is, therefore, of the opinion that the cross-complainant W. H. Sterchi is entitled to recover from the cross-defendant New York Indemnity Company," etc.

There are one or two preliminary questions which should be dealt with before coming to the merits of the controversy. The Indemnity Company insists that the decree in favor of Rose &

Company against Sterchi was only in the sum of $455.53, plus the statutory costs of 75¢ for recording the lien claim, and therefore that the action of the Chancellor in awarding Sterchi a recovery against it for $476.77 was erroneous. The amount of the claim of Rose & Company was $455.53, but the original bill also prayed for interest, and the decree of the Chancellor is that: "Complainant D. M. Rose & Company is therefore awarded a lien against the property of the defendant W. H. Sterchi in the sum of its original debt of $455.53, and statutory cost for recording its lien in the register's office amounting to 75¢, total $476.77, and all costs of the cause as between complainant and said W. H. Sterchi." We think it clear that the court intended to allow the complainant interest in the sum of $20.49, and that the words stating the allowance thereof were inadvertently left out of the decree. They were probably in the decree itself but were omitted by mistake in copying. At any rate the complainant was entitled to interest, and the amount, $20.49, is about correct. The insistence of the Indemnity Company will, therefore, be overruled.

The next insistence of the Indemnity Company is that there were not sufficient allegations in the pleadings upon which to base a finding or holding against it upon the doctrine of apparent authority of the agent, Wilson.

The allegation of the cross-bill was that:

"The said Roy S. Dysart furnished the said W. H. Sterchi a bond in the sum of $9,000, with the New York Indemnity Company, surety thereon, said bond or obligation being to the effect that the said Dysart would perform and would pay for all materials, labor, etc., used on said building. A copy of said bond is herewith filed as exhibit No. 1, to his answer and cross-bill, and the original will be produced at any time upon the order of your Honor."

The answer of the Indemnity Company was: "That it knows nothing of a contract entered into between R. S. Dysart and W. H. Sterchi. Cross-defendant denies that it executed, or that any one for it with proper authority executed, a bond for $9,000 as alleged, covering the faithful performance on the part of Roy S. Dysart of any contract with said Sterchi." The Indemnity Company later amended its answer by adding thereto the following:

"That W. H. Wilson had no authority whatsoever to execute for and on behalf of the cross-defendant the bond in question dated March 15, 1926, and signed by R. S. Dysart and New York Indemnity Company by W. H. Wilson, attorneys-in-fact.

"That W. H. Wilson had no authority to execute any such bond for and on behalf of the cross-defendant, except in compliance with the written, signed and sealed power of attorney dated the 27th

day of August, 1925, and when acting for and on behalf of the cross-defendant by virtue of said power of attorney the said W. H. Wilson had no authority to bind the cross-defendant, except when said bond or bonds were signed by W. H. Wilson, together with Robert S. Young or Sam E. Young.

"That it, the said New York Indemnity Company, did not receive the premium or premiums paid for the execution of said bond in question, or any part of said premium or premiums, and that it did not profit or benefit in any manner whatsoever as a result of the execution of said bond.

"It did not at any time ratify the execution of said bond or have any knowledge of its execution until at or about the time suit was instituted against it in the chancery court of Knox county for the collection of said bond and process was served on it as a defendant."

By agreement the foregoing amendment was treated as having been traversed by Sterchi.

Still later, Sterchi amended his cross-bill by adding thereto the following: "That the cross-defendant, New York Indemnity Company, having placed its agent, W. H. Wilson, in such a situation that a person of ordinary prudence was justified in assuming that said agent was authorized to execute the bond sued on on behalf of his principal, is estopped from denying said agent's authority to execute said bond." By agreement this amendment was treated as having been traversed by the Indemnity Company.

While these pleadings are meager for the purpose of recovering upon the doctrine of apparent authority, yet it is clear from the record that it was understood by the attorneys for the Indemnity Company that Sterchi was attempting in the taking of his proof and in the prosecution of his cross-bill to make out a case under, and to recover upon, that doctrine, and they raised no question in the court below, either by a pleading, by objections to evidence, or otherwise, that Sterchi's pleadings were insufficient for the purpose of recovering upon the doctrine of apparent authority. We can see that they were not taken by surprise or otherwise prejudiced in their defense to the cross-bill, and the insistence will therefore be overruled.

This brings us to the merits of the case. The material provisions of the power of attorney which the Indemnity Company executed authorizing Wilson to execute bonds for it, were as follows:

"Know all men by these presents, that the New York Indemnity Company . . . hath made, constituted and appointed and does by these presents make and constitute and appoint William H. Wilson, Robert S. Young and Sam E. Young of Knoxville and State of Tennessee its true and lawful attorneys, with full power and au-

thority hereby conferred in its name, place and stead, to sign, execute and acknowledge any and all bonds for straight construction, not in favor of the United States Government, provided no such bond exceeds the sum of $25,000, and no such contract exceeds the sum of $25,000, provided all bonds are signed by William H. Wilson, together with Robert S. Young or Sam E. Young," etc.

The bond in question was not signed by either Robert S. Young or Sam E. Young, both of whom are practicing attorneys at Knoxville. It was signed as follows:

"R. S. Dysart.
New York Indemnity Co.
By W. H. Wilson,
Attorneys-in-fact."

Wilson affixed to it the corporate seal of the New York Indemnity Company, but although he collected the premium he made no remittance to the Indemnity Company and did not advise it that he had executed the bond. The first information that the Indemnity Company had of the matter was a letter written to it on September 30, 1926, by the attorneys for Sterchi, setting forth the execution of the bond and the failure of Dysart to pay for materials, etc., and notifying it that Sterchi expected it to pay off the lien claims, etc. The Indemnity Company immediately disclaimed liability upon the bond on the ground that Wilson had no authority to bind it without either Robert S. Young or Sam E. Young also signing.

The contract between Dysart and Sterchi provided that: "Contractor shall furnish the owner an acceptable indemnity bond guaranteeing the completion of the building, and payment of all bills for material and labor used in the construction of the building. Owner to pay for bond."

Dysart made written application to McClurkan & Pressley, insurance agents at Knoxville, for the execution of a bond, McClurkan & Pressley had previously conducted an agency for a bonding company at Knoxville, but at the time Dysart's application was received, they were not representing a bonding company, and when applications for bonds were given to them they "brokered" them through other agencies. Mr. McClurkan states in his deposition that he knew that Wilson was soliciting and writing bonds for the New York Indemnity Company; that he left Dysart's application at Wilson's office, according to "the usual procedure," and went back later and got it and, he says, "our agency delivered it to Mr. Dysart." However, the bond was not delivered to Sterchi's representative (Ryno) by Dysart, but by some one from the bonding company, as appears from Ryno's testimony, which will be presently stated. Later, McClurkan & Pressley collected from Sterchi the premium on the bond, i. e., $173.25. Then they remitted to

Wilson his part, i. e., $129.94 but, as stated, Wilson did not remit it to the Indemnity Company or advise them that he had executed the bond.

When McClurkan received the bond from Wilson, he simply looked to see that it had been signed by the Indemnity Company and noticed that it had been so signed by Wilson as attorney-in-fact, but he made no further inquiries as to Wilson's authority to execute the bond. At the time he took the application to Wilson's office and at the time he received the bond from Wilson he knew that Wilson had previously been connected as bond salesman with the insurance agency of M. F. Flenniken & Company, who represented the Aetna Casualty & Surety Company, and that Wilson had recently severed his relations with that agency, had taken an office in the General Building, and was then selling bonds for the New York Indemnity Company.

Wilson was connected with M. F. Flenniken & Company from 1919 until about August 27, 1925, at which latter time he severed his relations with Flenniken & Company, and opened an office in the General Building, received the power of attorney from the Indemnity Company and became its agent, etc. Whether he also represented other insurance companies does not appear, although we will assume that he did not, but on March 15, 1926, when he executed the bond in question, he had a good reputation and had the confidence of the public and of McClurkan & Pressley and other insurance agents, and of contractors, at Knoxville. But shortly after the execution of the bond in question, Flenniken & Company discovered that he had defaulted with them, and the Indemnity Company discovered that he had been executing bonds for it without the signature of either Robert S. Young or Sam E. Young, that he had been collecting the premiums and not remitting to it, that he had failed to report to it the execution of bonds which he had thus written, and that he had defaulted with it. Thereupon, it immediately revoked and took up the power of attorney which it had executed to him, and severed its relations with him.

Mr. Ryno, supervising architect for Mr. Sterchi, testified that the bond in question was delivered to him at his office by "some one from the bonding company;" that he "read over the bond to see that it was signed by attorney-in-fact and also bore the corporate seal," but "made no investigation then as to the authority of the agents;" that he had told Dysart to get and deliver a bond, but did not know who he got it from until it was delivered; that he did not know W. H. Wilson when he saw him; that a number of men whom he did not know personally, that is, did not know their names, would call at his office as the representatives of bond-

ing companies, and that he had noticed Wilson's name on other surety bonds for the payment of bills for material, labor, etc., used in building. Mr. Ryno was asked to file, as exhibits to his deposition, any bonds with W. H. Wilson's name on them, and he filed two such bonds. One of the bonds thus filed by Mr. Ryno was a bond which a contractor, A. H. Whisman, had executed as principal and Wilson had, as attorney-in-fact, signed the name of the New York Indemnity Company as surety, without the signature of Robert S. Young or Sam E. Young or anyone else. However, this bond was executed on March 3, 1926, less than two weeks before the execution of the bond here in question, and was doubtless one of the bonds which Wilson executed without remitting the premium to the Indemnity Company, or advising the company of the execution thereof. The other bond which Mr. Ryno filed as an exhibit to his deposition was dated April 5, 1923, which was during the period that Wilson was with M. F. Flenniken & Co. The name of the Aetna Casualty & Surety Company was signed to this last mentioned bond by M. F. Flenniken, and Wilson simply attested it as resident assistant secretary.

Shortly after Mr. Ryno received the bond in question, he showed it to Mr. Sterchi, but he (Sterchi) made no personal investigation with reference to the manner in which the bond was executed. He testified that in that matter he relied on Mr. Ryno, the architect, and when requested by McClurkan & Pressley he gave them a check for the premium.

Two witnesses testified (by deposition) with reference to whether it was customary at Knoxville for one person or two persons, representing the bonding company, to execute bonds of the type involved in this case. These witnesses were Geo. A. Caldwell and E. R. Lutz, each of whom had had many years of experience as a bond salesman at Knoxville.

Mr. Caldwell stated, in substance, that it was customary for a certain class of bonds, known as "bound bonds," to be signed by the bonding company by "one man as attorney-in-fact alone and the seal of the company," and "contract bonds usually require two signers." When asked as to the extent to which these things were "generally known among people of Knoxville, and especially among people who seek bonds for construction," Mr. Caldwell said:

"I think it is generally understood among contractors that agents have limited powers both as to amounts and how these bonds are signed, but among the general public I do not think they have much information on this question. I think the public generally has confidence in the agents and they do not make inquiry into things of this kind."

Mr. Lutz testified that "it is customary for bonds to be signed by one attorney-in-fact with the impression of the seal of the company as well as otherwise."

The cross-examination of Mr. Lutz is as follows:

"Q. Mr. Lutz, will you state what character of bonds are thus made, that is to say with one signature of the agent? A. All character bonds are sometimes written with the single signature of the agent.

"Q. In this company, the National Insurance Company, taking the construction or contract bonds for illustration, by whom it is signed, how many signatures does it require? A. Two.

"Q. Will you state Mr. Lutz in this particular agency for the National Surety Company who signs such construction and contract bonds? A. They are signed by the resident vice president and the resident assistant secretary.

"Q. I will ask you if the signing of bonds by one agent or individually, is not what is known as bound bonds such as administration, notary public, court bonds, etc.? A. We regularly sign our bonds with two written officers of the company but other companies we have done business with have different practice, and one individual often signs bonds of any character we come in contact with.

"Q. Do not some companies require in addition to the agent a countersigner for bonds? A. I am not familiar with it if they are.

"Q. I will ask you for illustration the New Amsterdam Casualty Co. and the United States Casualty Co., represented in Knoxville by Hazen, Lindsay and Carrol, do they not require the signature of a countersigner in addition to the signature of the agent? A. I do not know their practice.

"Q. Mr. Lutz, is it not a fact that all agents, in so far as your information and understanding of the custom, have from their companies written authorization of powers of attorney controlling the question as to how and by whom bonds are written? A. Yes, sir.

"Q. Those powers of attorney, would they not limit and control the way in which bonds are executed and by whom they are signed? A. Yes sir."

It was stipulated on the record below "that at the time the bond in question in this cause was executed, W. H. Wilson, and not Robert S. Young or Sam E. Young, was the one who actively solicited the sale of bonds for the New York Indemnity Company in Knoxville, Tennessee, and who maintained an office therefor and

who received, or should have received, the commissions for the sale of any such bonds.''

It is seen from the foregoing statement of the facts of the record, that W. H. Wilson did not have actual authority to bind the New-York Indemnity Company in a bond of the kind here involved without the joinder therein, as attorney-in-fact, of either Robert S. Young or Sam E. Young; but ''an agent may bind his principal by all acts done by him within the apparent scope of his authority.'' 2 Joyce on Insurance (2 Ed.), sec. 424.

The bond here in question falls within a class of contracts known as guaranty insurance (1 Joyce on Insurance, Sec. 12); hence, the authorities dealing with the powers of agents of insurance companies are apposite.

In 2 Joyce on Insurance (2 Ed.), sec. 425, it is said:

''The authority of an agent of the assurer must depend, in a large measure, upon the authority which those dealing with him are justified from the acts or omissions of the principal in believing him to possess. The question is not so much, what powers did the agent actually possess—it is the agent's ostensible or apparent authority, that which he is held out to the world to possess, which is the test of his actual powers in the absence of knowledge of limitations thereon on the part of persons dealing with such agent. So it may be generally stated that an insurance company will not be allowed to hold out a person as its agent, and then disavow responsibility for his acts. And the tendency of the courts at the present day is toward a liberal, rather than a strict, construction of an agent's powers. The fact that the agent's appointment is by a written instrument cannot affect this rule where its terms are unknown to those dealing with him, and the rule has been extended to cover such acts of the agent as are with the scope of such authority as the assured was justified, by the company's acts, in believing him to possess. So that an insurance company is bound by the acts of its agents within the real or apparent scope of his authority, and, to this extent, the act of the agent is that of his principal. And this is so, even though he violates limitations upon that authority which are not brought home to the knowledge of the party with whom he deals, and this applies even though the agent's acts be in direct violation of his instructions. In other words, the acts and declarations of its local agent bind the insurer within the apparent scope of his employment the same as if they proceeded from the principal and the company is bound even though the agent violates his principal's instructions. So an insurance company is bound

by the acts and declarations of a local agènt within the scope of his employment. Again, insurance companies are responsible for the acts of their agents within the general scope of their business intrusted to their care; and no limitations of their authority will be binding, on parties with whom they deal, which are not brought to the knowledge of those parties.''

And our own Supreme Court has repeatedly held that an agent of an insurance company may bind his principal by any acts or contracts within the general scope of his apparent authority, notwithstanding the actual excess of authority. Murphy v. Southern Life Insurance Co., 3 Baxt. 440, 449, 27 Am. Rep., 761; Life Insurance Co. v. Fallow, 110 Tenn., 720, 732-733, 77 S. W., 937; Forresters v. Cunningham, 127 Tenn., 521, 529, 156 S. W., 192, 5 A. L. R., 1569.

In a leading case, the Supreme Court of the United States concluded a discussion of the legal question here involved with these words:

''The powers of the agent are, prima facie, co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. . . . An insurance company, establishing a local agency, must be held responsible to the parties with whom they conduct business, for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal.'' Union Mutual Life Insurance Co. v. Wilkinson, 80 U. S., 222, 20 L. Ed., 617, 623.

And in a later case the same court said:

''The law is equally plain that special instructions limiting the authority of a general agent, whose powers would otherwise be co-extensive with the business intrusted to him, must be communicated to the party with whom he deals, or the principal will be bound to the same extent as though such special instructions were not given. Were the law otherwise, the door would be open to the commission of gross frauds. Good faith requires that the principal should be held by the acts of one whom; he has publicly clothed with apparent authority to bind him.'' Southern Life Insurance Co. v. McCain, 96 U. S. 84, 24 L. Ed. 653, 654.

''A local insurance agent is presumed to have power co-extensive with the business intrusted to his care, and his powers will not be narrowed by limitations not communicated to the person with whom he deals.'' Farnum v. Phoenix Insurance Co., 83 Calif., 246, 257, 17 Am. St. Rep., 233, 241. See, also, 2 Corpus Juris, p. 566, Sec-

tions 208-209; Farmers Etc. Insurance Co. v. Chestnut, 50 Ill., 111, 99 Am. Dec., 492, 495; Ruggles v. American Central Insurance Co., 114 N. Y. 415, 11 Am. St. Rep., 674, 677; Hall v. Union Central Life Insurance Co. (Wash.), 51 L. R. A., 288, 291.

"Authority to solicit risks for and in behalf of a company, coupled with possession of its printed forms of applications, and policies duly signed and sealed, vests the agent thus equipped with apparent authority to make a binding contract of insurance without any further approval of the risk by the company." American Employers Liability Insurance Co. v. Barr (U. S. C. C. A., 8th Circuit), 16 C. C. A., 51, 54, 68 Fed., 873. See also Hartford Fire Insurance Co. v. Keating, 86 Md. 130, 146, 63 Am. St. Rep. 499, 503-504.

In the instant case it is undisputed that W. H. Wilson was the agent of the New York Indemnity Company, at Knoxville, for the "sale" of such bonds as that here involved. For that purpose, he had authority to maintain an office, with the equipment usual in such cases, and to advertise himself as such agent, and this he was doing, with the knowledge and authority of the defendant Indemnity Company, at the time the bond in question was executed. He not only had actual authority to "sell" its bonds, but the Indemnity Company had placed its seal in his possession and had vested him with authority to execute such bonds by signing the name of the company thereto and affixing its seal and to deliver them to the "purchasers" and collect the premiums, with but one limitation on his powers in these matters, viz.: that either Robert S. Young or Sam E. Young should also sign the bonds. Robert S. Young and Sam E. Young were not agents for the sale of bonds, and they, nor either of them, had authority to bind the Indemnity Company in the execution of a bond without the joinder of W. H. Wilson. This limitation on the powers of the agent, Wilson, although not purposely or actively concealed, was unknown to the public and was unknown to Ryno, who acted for Sterchi in accepting the bond here in question.

Authority to execute such bonds could have been conferred without a formal written power of attorney, and, under the facts of this record, it was not incumbent on the purchasers of bonds from Wilson, as agent for the Indemnity Company, to demand the production of evidence of his authority to execute them for the company. 2 Joyce on Insurance (2 Ed.), Sections 428-431. As said by the Supreme Court of Illinois "after a loss, the company should not be permitted to shield itself behind an unauthorized act of its agent, unless the insured was informed of, or knew the extent of, the authority conferred upon the agent." Hartford Fire Insurance Co. v. Farrish, 73 Ill. 166, 169.

It results that the appellant's assignments of error are overruled and the judgment of the chancery court in favor of W. H. Sterchi and against the New York Indemnity Company will be affirmed, and a decree will be entered accordingly against the New York Indemnity Company and the surety on its appeal bond, and for the costs of the appeal.

All concur.