It was incumbent upon the plaintiff, before he could recover for the loss of the bark "St. Mary," to show that the contract of insurance related to that vessel. *Page 267 
The policy of insurance was upon the bark "Empress, or by whatever other name or names the vessel is or shall be named or called." The bark lost was the "St. Mary," but the mistake in the name was no obstacle to a recovery, if in point of fact the underwriter, when the policy was issued, knew the true name, or intended to insure the particular vessel which was lost. (1 Arnould on Ins., 30, 170; 1 Duer on Ins., 172; Sea Ins. Co. v.Fowler, 21 Wend., 600; Pothier on Sales, art. 3, § 2; LeMesurier v. Vaughan, 6 East, 382.)
When it appeared upon the trial, in connection with the proof of loss, that the name of the vessel was the "St. Mary," it was necessary for the plaintiff to establish, by further evidence, the identity of that vessel with the bark "Empress," named in the policy. This he attempted to do by proof that he acted in procuring the insurance as agent for McGinness, the owner of the "St. Mary," and that she was formerly known as the "Empress," her name having been changed in October, 1865, before the issuing of the policy. The plaintiff also testified that, at the time of the application for the insurance, he informed Mr. Newcomb, the vice-president of the defendant's company, of these facts, and that the bark when last heard from, on the twelfth of December, was at Nevassa Island loading with guano.
There can be no doubt that the plaintiff intended to procure an insurance on the "St. Mary," and that he supposed that the policy when issued related to that vessel. Nor could there be any doubt, if no additional proof had been given, that the underwriter intended that the policy should attach to the "St. Mary," and that there was an aggregatio mentium between the parties to the contract.
But it also appeared, before the plaintiff rested, that there was a written application for insurance made by the plaintiff, and signed by him and his insurance broker at the interview between the plaintiff and Mr. Newcomb. In this application it was stated that the plaintiff desired insurance to the amount of $5,000 on the bark "Empress," of 365 tons *Page 268 
burthen, built at Sunderland in 1858, rated A 1½. It appeared upon the examination of Thompson, the plaintiff's broker, that applications for marine insurance are ordinarily filled out by the merchant or broker seeking insurance; that in this case, after the oral application was made and Mr. Newcomb had consented to take the risk, he asked the plaintiff if he should fill out the application for him, and he replied "yes;" that Newcomb then sent a clerk to the office of Taylor Co., ship surveyors, which was in the same building with that of the defendant, and who were publishers of the Lloyd's Register, for information as to the "St. Mary." The clerk brought a printed book, which the evidence clearly establishes was the Register, issued in June, 1865, and pointed out the entry of a survey of the bark "Empress," which he stated was that of the "St. Mary," the name having been changed after the book was published. Newcomb then filled out the application, and the plaintiff signed it without reading it, and the policy was subsequently issued upon this application. The "Register" contained a description of two barks, named "Empress," both built at Sunderland; one described as built in 1852, of 426 tons, and rated A, 2, and the other as built in 1858, of 365 tons, and rated A, 1½. The first of these vessels was the "St. Mary;" the other did not belong to McGinness, and he had no interest in her, and is the one described in the application.
When the plaintiff rested, the counsel for the defendant moved to dismiss the complaint, on the ground that it appeared that the defendant did not insure and did not intend to insure the "St. Mary."
It is a clear proposition that an agreement can only be formed by the consent of the parties, and there can be no consent when the parties are in error respecting the object of their agreement. (Pothier on Obligations, vol. 1, art. 3, § 17; 2 Bl., 442; 2 Kent, 477; 1 Par. on Con., 475; Hazard v. New EnglandIns. Co., 1 Sum., 218; Hammond v. Allen, 2 Sum., 387;Bruce v. Pearson, 3 J.R., 534; Greene v. Bateman, *Page 269 
2 W. M., 359.) The mistake in such a case would relate to the very ground and essence of the transaction.
Considering the policy issued by the defendant in connection with the application, and the description of the vessel called the "Empress," in the book referred to when the application was drawn, there seems to be no doubt that the vessel which the defendant intended to insure was the "Empress" described in the application, and not the vessel of that name owned by McGinness.
There is no claim that the agent of the defendant, knowing the bark the plaintiff had in mind, fraudulently inserted the description applicable to the other. The underwriter would, in such a case, be estopped from alleging the misrepresentation in the application as a defence, or from setting up that there was no mutual assent to the contract made. Nor would the jury have been authorized to find that the agent having in mind the "St. Mary," and its true description, by mistake, in transcribing from the Register, inserted in the application the description of the other vessel. The plaintiff informed the defendant's agent, when the application was made, that the vessel upon which he desired insurance had been owned by Pearson Co., of Hull, and the fact that she had been so owned appeared in the printed description of the "Empress" contained in the Register. It was also shown that, in October previous, the vessel had been resurveyed and reclassed by a surveyor of Lloyds, and that the record of the survey was in the office of Taylor Co. at the time of the application for insurance, and that the defendant's agent was informed that a new survey had been made. It did not appear that in fact the defendant had any knowledge of this survey or any information as to either of the vessels called the "Empress" beyond what was communicated by the plaintiff at the time of this application, or was contained in the printed description. The most that can be claimed from this proof is, that the defendant's agent was put upon inquiry, and might, by the exercise of diligence and care, have avoided the mistake in respect to the vessel *Page 270 
sought to be insured. But the negligence of the agent does not avoid the difficulty, that, in fact, the minds of the parties never met upon the subject of the insurance. The plaintiff applied for insurance on one vessel, and the defendant agreed to insure another. If both parties had in view the same vessel, and the error in the application related to some quality of the vessel, or to some extrinsic fact, and the error was that of the agent of the insurer, authorized to fill out the application, and the falsity of the representation was relied upon as a defence, another question would be presented which has been considered in several cases in this court. (Plumb v. Cattaraugus Ins. Co.,18 N.Y., 392; Rowley v. Empire Ins. Co., 36 N.Y., 550.)
The filling out of the application in this case by the agent of the underwriter was not according to the usual practice. The plaintiff signed it without reading it, and his omission to do so prevented him from discovering the mistake.
We are of opinion that the motion to dismiss the complaint should have been granted, upon the ground that no contract of insurance was effected between the parties.
The judgment of the General Term should be reversed, and a new trial granted, with costs to abide the event.
All concur.
Judgment reversed.