MATTOON MANUFACTURING COMPANY, Respondent, vs. OSHKOSH MUTUAL FIRE INSURANCE COMPANY, Appellant.

*October 13 — November 1, 1887.*

*Insurance, contract for, when complete.*

Where an applicant for insurance upon a factory, with its machinery and stock, executed a note to a mutual insurance company for $1,000, payable in installments at such times as the company might order, but undated and purporting to be in consideration of a policy

for which no number or date were given, and delivered the same to the agent of the company, with an application for insurance, also undated and not describing the property to be insured, under an agreement that the blanks in both should be filled and a policy should be issued when the applicant should furnish a statement upon what specific property the risk should be apportioned, and no such statement was furnished before the property was destroyed by fire, *held*, that the contract of insurance was not complete and the company was not liable for the loss.

APPEAL from the Circuit Court for *Sheboygan* County. The defendant appeals from a judgment against it. The case is sufficiently stated in the opinion.

*F. W. Houghton*, attorney, and *C. W. Felker*, of counsel, for the appellant.

For the respondent there were briefs by *Seaman & Williams*, attorneys, and *Joshua Stark*, of counsel, and oral argument by *Mr. Seaman* and *Mr. Stark*. To the point that the preliminary or parol contract of insurance was complete, they cited *Eames v. Home Ins. Co.* 94 U. S. 621; *Train v. Holland P. Ins. Co.* 62 N. Y. 598; *Fitton v. Fire Ins. Association*, 20 Fed. Rep. 766; *Baldwin v. Chouteau Ins. Co.* 56 Mo. 151, and numerous other cases. The terms of insurance were settled. If no apportionment was made, the court would apply the insurance to that class on which there was a deficiency. *Sherman v. Mad. Mut. Ins. Co.* 39 Wis. 104.

ORTON, J. This suit was instituted by the respondent company to recover $5,000 insurance, by virtue of a contract of insurance between the parties, made on the 25th day of August, 1886, on account of loss by fire occurring on the 10th day of September, 1886. The pleadings are such that only one single issue was presented, and that was whether there was any contract of insurance between the parties, or whether the facts proved constituted a contract of insurance. It was stipulated by appellant's counsel that the circuit court in which the action was tried might direct a verdict for either party, as it might be advised from the

evidence, and that the only error that the appellant can assign will be a matter of law arising upon the finding that there was a contract upon the facts proved. This seems to be the effect of the proposition made by the learned counsel of the appellant, found in the record. The court thereupon overruled the motion of the defendant to direct a verdict in its favor, and directed the jury to find a verdict in favor of the plaintiff for the sum of $4,800, with interest on that amount from the 14th day of September, 1886, and the defendant's counsel excepted to both rulings. The defendant's counsel thereupon made a motion for a new trial on the minutes, on the ground that said verdict is contrary to the law and the evidence, and excepted to the overruling thereof.

It is substantially stated in the complaint that about the 25th day of August, 1886, the respondent *gave its note* to the appellant for $1,000, payable in installments at such times as the appellant might order or assess, with a blank application annexed thereto, duly signed by the respondent; and that the same was accepted by the agent of the appellant with the understanding and agreement *that the same would effect a contract of insurance,* and that such agent should fill out, or cause to be filled out, the blanks in said application and note, in accordance with the facts relating to the ownership of the property to be insured, *with a description of the risk,* of which a printed form, issued by the respondent for such purposes, *was then and there exhibited* to the appellant's said agent; and that thereupon a written policy of insurance for such time and for such terms, in accordance with such agreement, should be made by said appellant, and *forthwith* delivered to the said respondent. It is further stated in the complaint that said note and application were by said agent forwarded to, and are in the possession of, said appellant, and said agreement was duly reported to said appellant, and said appellant duly accepted

of said risk, and notified the respondent thereof, but has neglected to send the written policy so promised to the respondent, and continued to so neglect, even after the fire, to send or deliver the same to the respondent, and refuses all liability in the premises.    These statements are followed with the proper statements of the loss of certain property by fire, and of demand and refusal of payment, etc.

It is very clear that these facts make a complete, subsisting, and valid contract of insurance, without the written policy that the appellant company so neglected to send or deliver to the respondent.    (1) It is alleged that the appellant gave its note of $1,000 for such insurance; (2) that there was an understanding and agreement, upon the acceptance of said note and application by the appellant, that the same would effect a contract of insurance, and that the agent should fill out the blanks therein as to date; (3) that said agent should fill out said application with a description of the risk, of which the printed form was then and there exhibited to said agent; and (4) that thereupon a written policy of insurance, for such time and terms, should be made out and delivered forthwith to the respondent; (5) that the appellant neglected, and still neglects, to do these things; and (6) that the appellant duly accepted of said risk, and notified the respondent thereof.    These allegations are necessary and vital to make the contract of insurance perfect and complete.

These important allegations were virtually denied in the answer, and it is substantially alleged that the note was in blank as to date; and the application was in blank as to date, and the description of the property to be insured, contained in a form to be *thereafter* made and furnished to the appellant by the respondent; and that such form was never furnished to the appellant until after the loss by fire had occurred.

In this connection it is proper to say that it is claimed on beh lf of the appellant that, admitting the facts stated in

the complaint to be true, there was no contract of insurance, because there had been no payment of the first installment of the said note, as the first year's premium on said risk, according to a by-law of said appellant company, that makes it liable only after such payment as a condition precedent. It seemed to be customary for said company to demand and receive such one year's premium on the delivery of the policy; and there is in evidence a policy made out and delivered, bearing date the 25th day of August, 1886, the date of the application in that case as well as in this, to the Halstead & Whiffin Manufacturing Company, by this same insurance company, for $5,000 on the main building, and three classes of property as the contents thereof, and said premium of $200 was demanded and paid at the time of such delivery. George B. Mattoon was the president of both companies and made the application in both cases. In that case the description of the particular property to be insured was furnished by the respondent to said company at the time of the application, and inserted therein, and everything was done to make a valid contract of insurance, before the actual issue of the policy, which was to be antedated to agree with the time of the application. This policy of insurance to another company, and the facts concerning the same, were introduced in evidence, against the objection of the appellant. But it certainly serves to illustrate the manner in which such business was done by both companies at the time, and when a contract of insurance was deemed fully completed. The terms of the note given in such a case, and in this case, would seem to determine the question of the payment of any and all of the installments thereof. The $1,000 is payable *by installments at such time as the directors of said company may order and assess.* If such a note is given, and everything else done to make a valid contract of insurance, we cannot say, as a matter of law, that the first year's installment of such a note must

be paid to make the company liable, unless the company had so *ordered and assessed* before the contract was otherwise completed. So we say, if everything stated in the complaint had been done, the contract of insurance was complete although such first year's installment had not been paid, because not so ordered and assessed.

There is very little substantial difference between the testimony of Mattoon, the president of the respondent company, who made the blank application and note, and of Mather, the agent of the appellant company, who received and transmitted the same to said company. Wherein there is any disagreement will be observed in passing. The facts appear to be as follows:

The applications for insurance, in both cases, were made at the same time. In the case of the Halstead & Whiffin Manufacturing Company, the application and note were filled out and signed at the time. The witness Mattoon testified that "he told the agent that he wanted the $5,000 to cover that risk [the factory and contents], but that he did not know which he would place it all on,— machinery, building, or stock,— but they were just taking an inventory." The treasurer of the company, Pantzer, handed the agent a printed "form" that had been used in other cases, containing buildings and factory, the size and location thereof, the amount of machinery, building, and stock to be insured. The object of awaiting such inventory appears to have been to make out a specific "form" similar to that exhibited, containing a description of the building, and the particular contents thereof, classified in certain amounts to make up the $5,000. This was to be the description of the property to be filled in the written application, after such inventory had been made, and such form furnished. It seems, also, that this particular building, and the contents thereof, had already been insured in other companies to the amount of over $60,000, and so classified. In explanation

of this, said witness testified: "I told him, when we got the inventory figured up, if *we were short on machinery* or *stock,* that I would put it on *that,*— divide it up; and he [agent] said that would be all right." When asked if he referred to filling out the "form" with the amount of insurance on each kind of property, which was not done at that time, he replied: "It was understood that it should be done." "That form was made out three days after the fire." "No form was made out and sent until it was made out and sent (with a letter to the company) three days after the fire" (which occurred on the 10th day of September, 1886). "It was left with him to make it, until [after] we got our inventory fixed, *until we could see where we were short.*" The blank note in evidence, which was signed by the respondent, had no date, and was as follows: "Oshkosh, Wisconsin, ——, 188—. For value received in policy No. ——, dated the —— day of ——, 188—, we promise to pay," etc. The application prefixed to the note is as follows: "Application of [respondent company] for insurance in [appellant company] in the sum of five thousand dollars, against loss or damage by fire and lightning *on the property below specified,* for the term of five years from the —— day of ——, 188—, to wit, ——." This blank left for a description of the property is followed by questions and answers in respect to the property to be inserted in the same; the first being as follows: "Are you sole owner of the property to be insured (exclusive of the land)? *Answer.* Yes." This note and application so left in blank were forwarded to the company by the agent, Mather, with a letter dated August 25, 1886, and at said date saying: "Inclosed find application [of] the Mattoon M. Co., to be held until they send you the form they are getting up, some new ones. [Signed] J. H. Mather." These were all the papers or advices the appellant company ever received until after the fire.

AUGUST TERM, 1887.                571

Mattoon Mfg. Co. vs. Oshkosh Mutual Life Ins. Co.

The witness Mattoon further testified: " I think it was three days after the fire, the 13th, when I made up the apportionment on the various specific items of property, as set forth in Ex. H." "Then, when we made up the apportionment or the forms, we placed it where we pleased; that is a privilege I had when I gave the insurance, and I could place it where I saw fit." This apportionment or form, which was to contain a specific description of the property insured, and which was so furnished after the fire, was, in effect, $500 on the buildings, describing them; $1,500 on machinery, shafting, etc.; $3,000 on stock, raw, wrought, and in process, etc. The appellant company was furnished, for the first time, the day after the fire, with a list of the companies in which the factory and contents had been insured, with the particular description of the property insured in each company, and the amounts of insurance upon each class of the property. At the bottom of this schedule or list is appended the following note, viz.: "The *Oshkosh Mutual* has accepted a risk of $5,000 on this property, *but it has not yet been apportioned between 'building,' 'machinery,' and 'stock,' and no policy yet issued.*"

The agent, Mather, who was called as a witness for the respondent, testified that he called at Mattoon's office, and applied for some insurance, as he said he would give him some; that Mattoon replied that they were not prepared to fix it then, as they were taking stock; and they showed him a form similar to that exhibited to witness, and he understood that they were getting up some new ones, and as soon as they got some out they would send them to the company. The witness then proposed that they would make out a blank application then, leaving the date blank, fill the note out, and leave the date blank, and when they got their forms ready they would send them to the company, and that they could then make out a policy, and date it, and fill in the date of the note and application to corre-

spond.   The witness further stated that Mattoon consented to this arrangement, and signed the note.   The witness Mattoon did not deny this version of the matter, when reexamined, except that there was nothing said about dating the note or application.

On the 9th day of September, the day before the fire, the secretary of the appellant company wrote to the respondent to send on the "forms" to be inserted in the policy, and that the policy would be sent by return mail, and yet none were furnished until three days after the fire.

This is all the material evidence in the case.   The circuit court directed a verdict for the plaintiff for $5,000; less, as is supposed, the $200, the first instalment of the note and first year's premium.

It seems to us that these facts, viewed in the most favorable light for the respondent, fall far short of making a contract of insurance.   (1) No policy of insurance was ever issued, nor could it be issued, by reason of a want of description of the property to be insured; and neither the note nor application was ever completed, and could not be, for the same reason.   (2) Neither party could have understood that the contract was completed and valid on the 25th day of August, 1886, or the note would have been dated on that day, as well as the application, and everything done, except the specific description of the property, which was not deemed material, and left to be inserted by the respondent in the application and policy, at any time before or after the fire, as a matter of mere form; or why was not the policy issued on the "factory and contents," and sent to the respondent to insert a special description of the property insured, at its leisure?   (4) The respondent was never bound by its note or application, or by any of the conditions of the policy, before the fire or since, and, of course, neither was the appellant bound by any pretended agreement on its part.   (4) Both parties saw fit

to make the contract and policy depend upon the respondent's furnishing the description of the property that it wished to have insured, as a condition precedent to the issuing of the policy.  (5) The respondent reserved the right to have the insurance placed upon property that was "short of insurance" in other companies, and to make an inventory in order to ascertain that fact, and to have such property inserted in the application and policy, and thereby prevented a consummation of the contract.  (6) The description of the property to be inserted in the application and policy was not immaterial, because both parties saw fit to make it material by their contract.  (7) As the matter stood before the fire, there was no consideration whatever for the risk.  All that the appellant company had ever received from the respondent was this blank note and blank application, with the request to "hold them" until the "forms" are sent on.  (8) The appellant company could make no assessment of the cash premium to be paid on this blank note, according to sec. 1907, R. S., and according to the condition of such notes themselves.  (9) The apportionment of the insurance was the right of the respondent, and it had not exercised that right.  (10) The appellant company had never acted upon the application, or been called upon to act, but awaited its completion according to directions.

By the simple elements or elementary principles which constitute a contract, here was no contract.  (1) Important and material things were left to be done.  (2) The minds of the parties had never met upon the subject-matter of the contract, or property to be insured.  (3) There was no mutuality or consideration in the unfinished state of the negotiation, and no promise or undertaking on the part of the appellant company to insure any certain property.  (4) There must be subject-matter to which the policy could attach.  (5) The amount of indemnity must be *definitely* fixed.  (6) The *duration* of the risk must be definitely fixed,

also. When did this risk commence, and when was the end of the five years? (7) The premium of cash or note, as the consideration of the risk, must be agreed upon, and fixed as a *valid charge against the insured.* These requisites of a contract of insurance without a written policy are all wanting in this case, and if either of them is wanting there is no valid contract. 1 Wood, Fire Ins. § 5, and note. "If anything is left open or undetermined, so that the minds of the parties have not met, no contract exists " (Id. § 6, and note; *Strohn v. Hartford F. Ins. Co.* 37 Wis. 625); "or where the *apportionment* of the risk has not been agreed upon " (Id.; *Sandford v. T. F. Ins. Co.* 11 Paige, 547); "or if anything remains to be done by the insured, as a condition precedent " (Id.; *Thayer v. M. M. Ins. Co.* 10 Pick. 326); "or if, upon the whole evidence, it is left in doubt whether a binding contract was really made, a recovery will not be permitted;" "the details of the contract must be fixed " (Id.; *Hughes v. M. M. Ins. Co.* 55 N. Y. 265); "or where the assured had the right to determine how the risk should be apportioned, no recovery for the loss could be had " *(Sandford v. Ins. Co. supra);* "or if the contract is not so far perfected that the insurer could maintain an action for the premium, no perfect agreement exists, and the insurer is not liable " (Id.; *Wood v. P. M. Ins. Co.* 32 N. Y. 619). A case very much in point is cited by the learned counsel of the appellant *(Kimball v. Lyon Ins. Co.* 17 Fed. Rep. 625), resting upon the want of an apportionment of the risk.

But this transaction is so wanting in all the elements of a perfect contract, it would seem to be supererogation to cite further authorities. Among other numerous authorities cited by the learned counsel of the respondent to support this contract, there are none applicable to such a case. Here, everything was left *blank* and unperfected, to await the apportionment to be made by the respondent, so as to fix the date, and consequently the duration, of the risk, and the lia-

bility of the respondent upon the note, or for the premium to be paid, and to complete a valid application for insurance. I do not believe that any case can be found so wanting in nearly all of the elements of a contract of insurance, and, much less, in which such facts are held to have constituted a perfect and valid contract. There may have been cases in which the contract was held to be valid and complete where the apportionment was not made by the parties, but they were such that certain known property was insured, and the law could make the apportionment from *data* furnished by the contract, or the circumstances of the case. Such was the case of *Fitton v. Fire Ins. Ass'n*, 20 Fed. Rep. 766, cited by the learned counsel of the respondent.

There was something said about the policy covering the "factory and contents," but the appellant company never knew or heard of any such thing; and the application made out by the respondent, to be forwarded by the agent to the company, was a blank as to any and all property to be insured, and remained so until after the fire, and the company never knew what property the respondent wished to have insured.

It is too clear for further consideration that there was no contract, and we think the circuit court erred in the law in finding from these facts that there was.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.