DORA THOMAS *vs.* COMMERCIAL UNION ASSURANCE COMPANY, LIMITED.

JOSEPH BENNETT *vs.* SAME.

Suffolk.    March 6, 1894. — June 23, 1894.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Fire Insurance — Apportionment of Entire Contract of Insurance — Misdescription of Structure Insured — " Hotel " and " Dwelling-House " — Evidence — Burden of Proof — Undisclosed Intention — Extrinsic contemporaneous Oral Evidence.*

Where but one premium is paid for an insurance against loss by fire on two structures, the contract of insurance is entire, and if void in part is void altogether, and cannot be apportioned.

At the trial of an action on a policy of insurance against loss by fire, in which the property insured was described as a "frame dwelling-house," it appeared that for years previous to its purchase by the assured the structure had been used as a hotel, and was known to the assured, and generally, as the " Glen Hotel," or the " Glen," and at the auction sale in which it was purchased by the assured it was so described in the notice read by the auctioneer, while the number of rooms therein and their arrangement and purposes showed that as it stood, though unoccupied, it was a hotel, and not a dwelling-house. *Held,* that upon these facts it could not be regarded as a dwelling-house when insured, and the mere fact that the assured after purchasing the property put in a care-taker, who slept in one of the rooms, or the undisclosed intention of the assured to let it to a family, did not change the character of the structure.

The description, in a policy of insurance against loss by fire, of a structure as a frame dwelling-house when it is in fact a hotel, is such a misdescription as will avoid the policy.

In an action upon a policy of insurance against loss by fire, the burden of proof is on the assured to show that the property which is the subject of insurance is of the character described in the policy, and it is competent for the insurer to show that it is of a different character, and therefore not the risk which was insured.

At the trial of an action on a policy of insurance against loss by fire, in which the subject of the insurance is described as a " frame dwelling-house," when it is in fact a hotel, testimony offered by the assured of what took place at the issuing of the policy, for the purpose of showing that the property was fully described

to the agent of the insurer, and that the description contained in the policy was his description, was rightly excluded, as, if admitted, it would have tended to vary the written contract.

TWO ACTIONS OF CONTRACT upon a policy of insurance, in the form prescribed by Pub. Sts. c. 119, § 139, insuring the plaintiff Thomas, in consideration of the payment by her to the defendant of the sum of ten dollars and eighty-three cents, against loss by fire for one year from July 14, 1890. The amounts and the property insured were as follows: "$3,000 on her frame dwelling-house situate on Glen Avenue near Coolidge Avenue, Watertown, Mass.; $1,000 on her frame private stable situate near the above dwelling." On the face of the policy were the words: "Payable, in case of loss, to Joseph Bennett, mortgagee, as his interest may appear."

The first action was brought by the plaintiff Thomas, in which, by the first two counts of the declaration, she sought to recover the sum of $1,000 as the excess of the amount of insurance and loss above the amount due upon a mortgage of the premises, and by the third count to recover the entire amount of the insurance.

The second action was brought by Joseph Bennett, the mortgagee of the premises insured, seeking to recover $3,000, which was the amount due on the mortgage.

Trial in the Superior Court, before *Fessenden*, J., who allowed a bill of exceptions in substance as follows.

The plaintiff Thomas, on June 5, 1890, bought at auction a parcel of land with a structure and stable thereon situated on Glen Avenue near Coolidge Avenue in Watertown. The structure thereon, which in the policy was described as a frame dwelling-house, had for years, and up to the time of its damage by fire on May 7, 1890, shortly before its purchase by the plaintiff, been used as a small hotel, and was known as the Glen Hotel. It was a frame house about seventy-one feet long and forty feet wide, three stories in height, with a piazza in front, and containing about thirty rooms.

One Gleason testified that he was an auctioneer, and that he sold the property at auction to Mrs. Thomas, on June 5, 1890, and that the advertisement of the sale, which at that time he read in the hearing of Mrs. Thomas, described the premises as

the "Glen Hotel." He further testified, that in 1890 he was an assessor of the town of Watertown, and was familiar with the property in question; that there were on the entrance floor of the house, as he thought, three parlors, a dining-room, reading-room, billiard-room, and bar-room, all of which were numbered; that on the second and third floors there were sleeping rooms, and also on the third floor a large hall in the rear.

The plaintiff Thomas testified that the house was built in 1881; that it was always called the Glen Hotel, or the Glen, usually the Glen; that when she bought it she knew it had been kept as a hotel; that she attended personally at the auction sale on June 5, 1890, and that the auctioneer read a notice of what he was going to sell, which described the property as the "Glen Hotel"; that on the same day on which she bought the property she hired one Egan to take care of the place, who remained there about three months, and slept in one of the rooms; that afterward she let a Mrs. Thornell go into the house, and have the use of it for its care, until it and the stable connected with it were destroyed by fire, on May 30, 1891; that she was going to sell it as soon as she got a chance, and was trying to get a family to let it to so as to get a little out of it; and that in November, 1890, she made repairs on that part of the building which had been burned previously, on May 7, 1890.

It was admitted that there was no written application for insurance, and the plaintiff Thomas offered to show that, at the time the policy was issued, she, the plaintiff Bennett, and the defendant's agent were together at the plaintiff Bennett's office in Boston, and that then the premises were described to the agent, who made out the policy in his own handwriting, and that the description of the premises therein was his; that he was given a general description of the buildings, and was told that the property was formerly known as the Glen Hotel; and that he knew that at the time of the application it was occupied by some one as a care-taker. The plaintiff Bennett testified that he held a mortgage on the property for $3,000, dated July 14, 1890, which was in force when the buildings were burned in May, 1891.

The defendant introduced the testimony of experts upon insurance rates, who testified substantially that there was an established custom among fire underwriters in Massachusetts to

charge a fixed rate of premium upon detached frame dwelling-houses, and a fixed rate on detached frame hotels, and that the rate on such frame dwelling-houses is from twenty-five cents to thirty-five cents a year on a hundred dollars, and is the lowest rate on any class of frame structures; that the rate upon detached frame hotels is six or eight times as much; that a building built for a hotel, containing parlors and dining-room, bar-room, billiard-room, hall, and other rooms for general purposes, and some ten or twelve bedrooms, which building had been used for a hotel until shortly before the date of the policy and had not been remodelled, would belong to the hotel class; and that if such building had been partly destroyed by fire, and it remained unrepaired up to the issuing of the policy thereafter, and was not occupied except as a watchman stayed in the building to take care of it, the premium would be materially increased, and that the working of carpenters in such a building would further increase the premium.

At the conclusion of the evidence, the judge ruled that the actions could not be maintained, and directed a verdict for the defendant in both actions; and the plaintiffs alleged exceptions.

*F. E. Snow & G. D. Burrage*, for the plaintiffs.

*W. C. Loring*, for the defendant.

MORTON, J. The policy upon which these suits are brought was issued to the plaintiff Thomas. The property which was the subject of the insurance is described in the policy as " her frame dwelling-house situated on Glen Avenue near Coolidge Avenue, Watertown, Mass.," and " her frame private stable situated near the above dwelling." There was but one premium paid for the dwelling and stable, and the contract of insurance was an entire one. If it is void in part, it is void altogether, and cannot be apportioned. *Friesmuth* v. *Agawam Ins. Co.* 10 Cush. 587. *Brown* v. *People's Ins. Co.* 11 Cush. 280. *Lee* v. *Howard Ins. Co.* 3 Gray, 583. *Kimball* v. *Howard Ins. Co.* 8 Gray, 33.

The questions on which the cases principally turn are, first, whether the main building was properly described as a dwelling-house, and, secondly, if not, what is the effect of the misdescription. We think that, upon the undisputed facts, it cannot be regarded as having been a dwelling-house at the time when it

was insured. It was conceded at the trial that the structure had been used for years, and up to the time of its damage by fire shortly before its purchase by the plaintiff, as a small hotel, and was known as the Glen Hotel. The plaintiff Thomas testified that "it was always called the Glen Hotel or the Glen, mostly the Glen," and that at the auction at which she bought the property the notice read by the auctioneer described it as the Glen Hotel. There was no testimony that it had been occupied as a dwelling-house before the issuing of the policy, unless the evidence of the presence of the care-taker, Egan, put in by the plaintiff, constituted such occupancy. The number of rooms in the house, and their arrangement and purposes, showed that it was as it stood a hotel, and not a dwelling-house; and we do not think that the mere fact that the plaintiff immediately after purchasing the property put in a care-taker, who slept in one of the rooms, changed the character of the place from a hotel to a dwelling-house. No doubt the plaintiff could have made a dwelling-house of it, but she did not. She herself says that she was going to sell it as soon as she got a chance, apparently just as it was, if she could. Her undisclosed intention to let it to a family, so as to get a little out of it, did not change the open and visible character of the property.

The property being a hotel, and not a dwelling-house, the next question is how that affects the policy. It is possible that a building, though called a hotel, may be in fact a dwelling-house, and more correctly described as such. But, as already stated, we think that, upon the undisputed facts, this building must be regarded as a hotel. The testimony shows that a hotel risk is different from and more hazardous than a dwelling-house risk. The burden was on the plaintiff to show that the building was a dwelling-house. *Ring* v. *Phœnix Assurance Co.* 145 Mass. 426. It was competent for the defendant to show that this was a hotel, and therefore not the risk which it insured. It agreed to insure a dwelling-house, and not a hotel. The property which was the subject of insurance was in fact a hotel. The minds of the parties have not met, therefore, and no such contract as the policy purports to express has been entered into; and as the only claim which the plaintiff has upon the defendant is under the policy, it follows that she cannot maintain it.

*Gardner* v. *Lane*, 12 Allen, 39.　*Goddard* v. *Monitor Ins. Co.* 108 Mass. 56.

The testimony which was offered by the plaintiffs of what took place at the issuing of the policy for the purpose of showing that the property was fully described to the agent, and that the description contained in the policy was his description, was rightly excluded. If admitted it would have tended to vary the written contract. *Barrett* v. *Union Ins. Co.* 7 Cush. 175. *Jenkins* v. *Quincy Ins. Co.* 7 Gray, 370. *McCluskey* v. *Providence Washington Ins. Co.* 126 Mass. 306. *Batchelder* v. *Queen Ins. Co.* 135 Mass. 449.

The result is, that the exceptions must be overruled, and it is

*So ordered.*