# Kirby *v*. The State.

## *Murder.*

### (Decided May 15, 1907.  44 South. 38.)

1. *Witnesses; Cross Examination.*—Although the testimony of the witness showed that the deceased was carrying the pistol, the court properly sustained objections to questions by defendant on cross examination of such witness seeking to show threats by deceased with a pistol, where the testimony made out a case of homicide without provocation or threats or self defense.

2. *Homicide; Evidence; Character of Deceased.*—Where there was no evidence of self defense the general character of deceased for turbulence and violence was not at issue and evidence in reference thereto is immaterial and properly excluded.

3. *Appeal; Review; Harmless Error; Admission of Evidence.*— Where a witness subsequently gave the testimony called for by a question to which objection was sustained, the error in sustaining objection to the question, if any, was harmless.

4. *Homicide; Evidence; Dying Declarations.*—A dying declaration need not be reduced to writing in order to render it competent; and it may be evidenced partly by writing and partly by parol, and the fact that decedent used profane language before and after making the declaration did not render it inadmissible as a dying declaration.

5. *Appeal; Review; Exception.*—An exception taken to each and every party separately of the general charge of the court is too indefinite to present for consideration, on appeal, any particular part of the charge.

6. *Homicide; Instructions; Self Defense.*—Instructions predicating an acquittal upon the doctrine of self defense should set out the

[Kirby v. The State.]

elements of self defense, and a failure to do so renders the charge bad.

7. *Same.*—Charges predicating an acquittal on the doctrine of self defense which ignore defendant's freedom from fault in bringing on the difficulty and the real or apparent necessity for taking life, are bad and properly refused.

. 8. *Same.*—A charge asserting that defendant could not have retreated without placing his life in greater jeopardy and that he was relieved by law of the duty of retreating, unless the jury found that he was at fault in bringing on the difficulty, is bad for invading the province of the jury.

9. *Criminal Law; Instruction; Reasonable Doubt.*—A charge asserting that if the jury should be in doubt as to the guilt of defendant he should be acquitted, and that all doubt should be resolved in his favor, is bad.

10. *Same.*—A charge asserting that before defendant could· be found guilty, they must be satisfied beyond a reasonable doubt, etc., and unless the jury is so convinced by the evidence of defendant's guilt that they would each venture to act upon the decision in matters of the highest importance to their own interest, etc., is properly refused.

11. *Trial; Instructions; Degree of Proof.*—An instruction asserting that the highest degree of proof was required to warrant a conviction of homicide, is properly refused, as was an instruction that · if the evidence was evenly balanced the jury should lean to the side of mercy.

12. *Criminal Law; Instructions Argumentative.*—A charge asserting that in considering dying declarations the jury should consider that decedent was not under oath and likely to be influenced against defendant, was properly refused as argumentative.

13. *Same.*—A charge asserting that the possession of a deadly weapon may be explained so as to create no presumption against defendant, is argumentative and abstract.

14. *Same.*—A charge is properly refused, as abstract, which asserts that, in connection with the evidence that defendant was in possession of a deadly weapon, the jury should consider the fact that he was a guard and required to go armed, and that if decedent and any other person had planned to take the life of defendant the act of defendant would not be unlawful.

15. *Homicide; Instructions; Self Defense.*—A charge asserting that if decedent threatened to shoot defendant, and defendant was unable to retreat, he should be acquitted; that if defendant was not at fault in bringing on the difficulty, and could not have retreated without increasing his peril, he should be acquitted; and that the law gives every man the right to protect his life and person from a threatened assault, each pretermits peril to life or great bodily harm, and defendant's honest belief in such peril, and are properly refused.

APPEAL from Jefferson Criminal Court.

Heard before Hon. DAN A. GREENE.

Jim Kirby was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The following charges were requested by defendant and refused:

"(8) I charge you that, if the defendant took the life of John Fuller in defense of his own, it is your duty to acquit the defendant.

"(9) I charge you that, if the defendant killed the deceased in self-defense, then you will find him not guilty.

"(10) I charge you that if the defendant at the time of the killing entertained a reasonable apprehension involving imminent peril to life or limb, and could not retreat in safety or without putting hmself at a greater disadvantage, then the killing would not be wrongful, and it would be the duty of the jury to acquit the defendant."

(11) Same as 10, with slight change of verbiage

"(13) I charge you that, if you believe from the evidence that the defendant would have placed himself at a greater disadvantage by retreating, then he was relieved by law of the duty of retreat."

"(15) I charge you if the defendant could not have retreated without placing his life in greater jeopardy, then he was relieved by law of the duty of retreating, unless the jury believe that the defendant was at fault in bringing on the difficulty.

"(16) I charge you that, if you are in doubt as to the guilt of defendant, then you shall find the defendant not guilty.

"(17) I charge you that, in all matters in which there is a doubt, you shall resolve the doubt in favor of the defendant."

"(34) I charge you that, if the jury are in doubt of the guilt or innocence of the defendant, then they shall acquit the defendant."

"(18) I charge you that, before you can find the defendant guilty, you must be satisfied beyond a reasonable doubt and to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it was wholly inconsistent with every other rational conclusion, and unless the jury is so convinced by the evidence of the defendant's guilt that they would each venture to act upon the decision in matters of highest importance to their own interest, they must find the defendant not guilty."

"(21) I charge you that in cases of homicide the very highest degree of proof is required before you can convict."

"(29) I charge you that, if the evidence is evenly balanced, you should lean towards the side of mercy and decide in favor of the defendant.

"(30) I charge you that, in taking into consideration the dying declaration of the deceased, you are authorized to take into consideration the fact that the deceased is not under oath, and that he was likely to be influenced against the defendant."

(31) Same as 30, in legal effect.

"(32) I charge you that the crime of murder consists of four elements—willfulness, deliberation, malice, and premeditation; and, unless the state has convinced you beyond a reasonable doubt and to a moral certainty as to the existence of these four elements in the offense of which the defendant stands charged, then you shall acquit the defendant."

"(39) I charge you that the possession of a deadly weapon may be explained, so that no presumption against the defendant may arise.

"(40) I charge you that, if you find from the evidence that the defendant was required in the performance of his duties as a guard to carry a gun, then you shall not

take this fact as an evidence of any murderous or malicious intention on the part of the defendant."

"(42) I charge you that, in connection with the evidence that the defendant was in possession of a deadly weapon at the time of the killing, you shall take into consideration the evidence that the defendant was a guard and was required to go armed."

"(44) I charge you that if you believe from the evidence that the deceased, together with any person or persons, had planned to take the life of the defendant on the night of the killing, and did make an attempt to carry out their plan, then the act of the deceased would not be unlawful, and it would be your duty to acquit the defendant.

"(45) I charge you that, if you find from the evidence that the deceased did assault the defendant and did threaten to take his life, then you shall acquit the defendant."

"(47) I charge you that if the evidence shows that the deceased assaulted the defendant, and further threatened to shoot him, and the defendant was unable to retreat, so as to remove himself from harm, then you shall not consider the killing unlawful; and shall find the defendant not guilty.

"(48) I charge you that if you find from the evidence that the deceased assaulted the defendant, and further threatened to kill him, and the defendant was not at fault in bringing on the difficulty, and could not have retreated without increasing his peril, then you shall acquit the defendant.

"(49) I charge you that the law gives every man the right to protect his life and person from a threatened assault, and if the defendant was not at fault in bringing on the difficulty, and could not have retreated without increasing his peril, then you shall acquit the defendant."

No counsel marked for appellant.

ALEXANDER M. GARBER, Attorney General, for the State.—No brief came to the Reporter.

DENSON, J.—Under an indictment charging that "Jim Kirby unlawfully and with malice aforethought killed John Fuller, whose name is to the grand jury otherwise unknown, by shooting him with a pistol," Jim Kirby was tried and convicted of manslaughter in the first degree and sentenced to imprisonment in the penitentiary for a period of eight years. The record appears to be regular, and we shall write with respect to the rulings of the court on the admissibility of evidence and charges refused.

Groomster, the first witness examined for the state, made out a case of homicide without any provocation on the part of the deceased. In other words, on this witness' evidence, self-defense could not be predicated. Therefore whether or not the deceased was armed or had a pistol in a scabbard that he was wearing, in the absence of a showing, or of an offer to show, by the witness, that deceased attempted to draw or use the pistol, or that he attempted to do violence to defendant, the court cannot be put in error for sustaining objections to questions, propounded by defendant to the witness, seeking to evoke such testimony in respect to the pistol. This covers the first, second, third, and fourth exceptions.

In respect to all other exceptions (except the thirteenth) reserved to rulings made on questions propounded to the witness Groomster, the matters called for by the questions either transpired after the difficulty between defendant and Fuller, or are not shown to have transpired at the time of the difficulty, and are not shown to be a part of the res gestæ. They are without merit.

The general character of Fuller for violence was not in issue at the time Groomster was asked if he knew the general character of the deceased for violence. Therefore the court did not err in sustaining the solicitor's objection to the question, and the thirteenth exception is without merit.

Dr. Edwards was asked if he was called to see a man named Fuller. Objection was made on the ground that the question did not identify the deceased. If there was any merit in the objection at the time it was made, the witness subsequently identified the man he was called to see as John Fuller. For this reason the ruling of the court on the objection cannot be made ground for reversible error, and the fourteenth exception cannot avail defendant anything.

Taking Dr. Edwards' evidence on the direct examination, together with that given by him on the redirect examination, it cannot be doubted that a sufficient predicate for the admission of dying declarations was shown, and the fifteenth and nineteenth exceptions are without merit.—*Sims' Case,* 139 Ala. 74, 36 South. 138, 101 Am. St. Rep. 17.

Dr. Edwards testified that a portion of the statement made by the deceased was written down by witness, and he identified a paper writing, handed to him by the solicitor, as containing the dying declaration of John Fuller, made to witness, and written by witness at the time the declaration was made. On the solicitor's offer to introduce the paper writing, objection thereto was made on the ground—among others—that the writing had been shown to be only a part of the statement made by the deceased. It was shown that the paper was not signed by the deceased. A dying declaration need not be reduced to writing to make it competent; but if reduced to writing, and the writing is actually in pos-

session of the prosecuting attorney, these facts would not render parol proof of the declaration inadmissible. —*Sims' Case, supra.* So it would seem to follow that such declarations may well be evidenced partly by writing and party by parol. The paper in this case was properly admitted. The defendant could have drawn out, from the witness producing it, or even from others who were present, all else pertaining to the difficulty that was stated by the declarant; or, for that matter, the state might have done so, or the state might have proved by the witness the contents of the paper writing, and have offered the paper writing in evidence as a memorandum made at the time as a part of the witness' evidence. At any rate, the writing was well admitted against the objection.—*Sims' Case, supra,* and cases there cited; *Krebbs' Case,* 8 Tex. App. 1; *State v. Cameron,* 2 Chand. (Wis.) 172; *People v. Glcnn,* 10 Cal. 32; *Collier v. State,* 20 Ark. 36; *Com. v. Haney,* 127 Mass. 455; *State v. Patterson,* 45 Vt. 308, 12 Am. Rep. 200.

The fact that the deceased used profane language before and after making the declarations cannot affect their admissibility. This is responsive to the eighteenth exception.

It is clear that evidence as to what was done by Crozier and Reed, or by either of them, after the defendant left the place where the killing occurred, was incompetent, and the twentieth and twenty-first exceptions are without merit.

Defendant testified: "We had a difficulty the night before at No. 4." Conceding that the difficulty referred to was between the deceased and the defendant, the particulars of it were not a proper subject of inquiry, and the twenty-second exception presents no ground for reversal.—*Harkness' Case,* 129 Ala. 71, 30 South. 73.

Whether or not Crozier and Reed were present at the previous difficulty between defendant and deceased was

immaterial, as was also the fact as to a previous difficulty between defendant and Crozier and Reed. That Crozier and Reed, or either of them, shot the defendant after the difficulty in which defendant killed the deceased, was immaterial to any issue in the case. In this view, the twenty-fifth exception is not well taken.

Reed and Crozier are not shown by the evidence to have participated in the difficulty between deceased and defendant; and we have been unable to see what light evidence of previous threats by them against the defendant could have thrown on the case, and it must be held that the twenty-sixth exception is without merit.

The court properly limited Dr. McCrory's testimony to his examination of wounds on Kirby which were inflicted upon him in the difficulty with Fuller. This covers the twenty-seventh, twenty-eighth, and twenty-ninth exceptions.

The questions asked witnesses Brown and N. A. Walker were clearly subject to the objections made to them by the state, and the thirtieth, thirty-first, and thirty-second exceptions are without merit.

The objection to the question asked witness Butler by defendant was properly sustained. The question does not connect or purport to connect the two men inquired about with the prosecution or with any witness who testified in the case. This answers the thirty-third exception.

The court was required by the defendant to put the general charge in writing, and it is set out in full in the bill of exceptions. At the conclusion of the charge the bill of exceptions shows that the defendant reserved an exception in this language: "To which written charge the defendant then and there duly excepted, to the same as a whole, and to each and every part thereof separately." That the charge as a whole is not erroneous is

demonstrable by a mere reading of it. The exception, "to each and every part thereof separately," is too indefinite to present for consideration any particular part of the charge. The defendant by this sort of exception would leave it to the court, if to any one, to say how the charge should be parted in order that his exception should be considered, and this is no part of our duty. While the law requires this court to consider a criminal cause on appeal without an assignment of errors, and even without a brief being filed, it does not require us to form the defendant's bill of exceptions, nor to so divide a general charge of the court into parts that a reversible error may be found. "A party excepting must make his exceptions so specific that the matter relied on as error will be apparent to his adversary and to the primary court." The exception as shown by this record amounts to no more than a general exception.—*Irvin's Case*, 50 Ala. 181; *Cohen's Case*, Id. 108; *Elliott v. Dycke*, 78 Ala. 150, 157; *Mayberry v. Leech, Harrison & Farwood*, 58 Ala. 339, 342.

The defendant requested the court to give 43 written charges, 20 of which were given, and 23 refused.

The eighth and ninth refused charges are bad, for failure to set out the ingredients of self-defense.

The tenth, eleventh, and thirteenth refused charges ignore freedom from fault; and the thirteenth also ignores necessity for taking life of deceased.

The fifteenth charge invades the province of the jury.

The sixteenth, seventeenth, and thirty-fourth refused charges are so patently bad as to require no discussion. —*Dennis' Case*, 118 Ala. 72, 23 South. 1002.

The eighteenth charge refused to defendant has been many times condemned.

Refused charge 21 is bad. It is misleading, in that the jury might have been led to the belief that they

should be satisfied of the defendant's guilt; and to require proof to the satisfaction of the jury would be to exact too high a degree of proof.—*McCormack's Case*, 133 Ala. 202, 32 South. 268; *Dennis' Case*, 118 Ala. 72, 23 South. 1002.

Charge 29, refused to defendant, is bad, and was properly refused.—*Hughes' Case*, 117 Ala. 25, 23 South. 704 (charges 17, 18, 46, and 47).

Refused charges 30 and 31 are argumentative.

Refused charge 39 is argumentative, and there is no attempt to apply it to the facts of the case.

Charges 40, 42, and 44 are abstract, and otherwise inherently bad.

Charge 46 refused to defendant is frivolous. It ignores every ingredient of self-defense.

Charges 47, 48, and 49 of defendant's series were properly refused. Each ignores peril to life or danger of grievous bodily harm, and ignores honest belief by defendant that he was in peril to his life or was about to suffer grievous bodily harm.—*Kennedy's Case*, 140 Ala. 1, 37 South. 90; *Wilson's Case*, 140 Ala. 43, 37 South. 93; *McClellan's Case*, 140 Ala. 99, 37 South. 239.

The record contains no reversible error, and the judgment of conviction is affirmed.

Affirmed.

TYSON, C, J., and HARALSON and SIMPSON, JJ., concur.