56 So.2d 631

**JERSEY INS. CO. v. RODDAM.**
6 Div. 199.

Supreme Court of Alabama.
Oct. 11, 1951.

Rehearing Denied Jan. 31, 1952.

F. W. Davies and Davies & Williams, all of Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee.

636

SIMPSON, Justice.

This is an action on a policy of fire insurance wherein plaintiff, Roddam, obtained a judgment against the defendant, The Jersey Insurance Company, for damage by fire to his building. The defendant appeals from that judgment.

The policy in suit described the insured property as a "church edifice" and the endorsement on the back of the policy described it as a "church and dwelling." In fact, however, the building sought by plaintiff to be covered by the insurance served a multiple use. Two parts of it were devoted to an automobile garage and body shop, another smaller part was used as living quarters, and still another part, about one-fourth of the total square footage, was rented and used by a religious association or society for the holding of worship services.

The first and controlling proposition argued for error is that the trial court erred in refusing to give for the defendant the affirmative charge on the theory that the property damaged by fire was not within the coverage of the policy and that the coverage could not be extended to the building in question. It is contended that to do so would amount to the creation of a new and different liability by waiver or estoppel, arising out of the alleged act of the defendant's agent in so describing the property.

Concededly, coverage in an insurance policy cannot be enlarged or extended by waiver or estoppel, but in our view of the case this is not the question. The real question is whether the insured can be held bound by the acts of the general agent in so describing the property in the insurance contract. The situation here presented, as we see it, is merely misdescription of or failure to exactly describe the usage to which the property was subjected by the insurance company, through its general agent, either through mistake or for the purpose of meeting competition by writing the insurance for a lower rate than would have been required had the property been described as a garage.

Following is the tendency of the plaintiff's evidence and the inferences reasonably arising:

A Mrs. Taylor was the general agent of the defendant company and was authorized to write the policy. Tutton v. Liverpool & London Globe Ins. Co., 237 Ala. 230(5), 186 So. 551. She had written previous policies on the building. During

the preceding policy year the plaintiff had made extensive improvements, including the institution in the building of the large garage in front, which adjoined the church room also in front, and the smaller automobile body shop in the rear of the church. In the rear of the large garage were three rooms used as living quarters. When agent Taylor went to Tarrant City for the purpose of procuring a renewal of the insurance policy, she commented to the defendant about his having made extensive improvements and suggested he double the amount of his coverage, but this he declined to do. On this trip, before talking to the plaintiff, she had stopped in the automobile in front of the garage while a companion, who was also interested in plaintiff's renewing the insurance, went into the garage to search for him. There were two plate glass windows in the front of the garage room approximately six by eight feet in size, on which were the words "Tidwell Garage & General Repair" and on the corner was a board sign bearing the words "Auto Repairs— Garage." Adjoining this large garage room was the smaller church room. This situation was quite visible to anyone and we think the jury could properly infer, and no doubt correctly, that the agent, whose purpose it was to write insurance on this particular building, could see the use to which the building was being subjected, knew its character and that in addition to its use as a church it was also being utilized as a garage; and as regards the portion used as a dwelling house, she made the endorsement herself on the back of the policy indicating such. Indeed, a competing agent, a friend of plaintiff, who was also trying to sell a policy on the building, prior to the issuance of the policy asked Mrs. Taylor where and how she was basing her rate, stating he was bidding on the same insurance and that his rate was much higher than hers, and she replied that she was getting her rate at the same place he got his. He then queried, "Well, do you know there is a garage and a church and a dwelling in there?" and she replied, "Yes, I know my business." During the negotiations between plaintiff and this general agent of the insurer, she

first quoted a much higher rate and plaintiff stated it was "outrageous and * * * wouldn't have it. It was in fact twice as much as I had been paying." Thereafter, however, she called him again urging him to take the insurance and advised him that there had been a mistake in the rate and quoted him a much lower rate, and when his friend told him that he could not compete with such a rate and advised him to take the policy from this agent, he did so. According to his testimony, he made no suggestions about the description of the property, had no knowledge that it was so described, and when he received the policy he never looked at it, but placed it among his other belongings. From these facts the jury could find that the description of the building was that which the insurer's general agent chose to select and that perhaps the first-quoted higher rate was to cover the property with respect to its multiple use and the reduction was to meet the competition by writing the policy as a church edifice.

Therefore, it is manifest that the principles relative to extending coverage of the policy by waiver or estoppel are not pertinent, the real issue being whether or not the company can be held bound by this conduct of its general agent.

In some jurisdictions it seems to be the rule that where the property, the subject of the insurance, is misdescribed, even though the description be written by the company's agent, there can be no liability. It is said the minds of the parties never met on the subject matter of insurance; or that anterior or contemporaneous agreements between the parties thereto cannot be admitted to vary the terms of the written contract. Thomas v. Commercial Union Assur. Co., 162 Mass. 29, 37 N.E. 672, 44 Am.St.Rep. 323; Bowditch v. Norwich Union Ins. Co., 193 Mass. 565, 79 N.E. 788; Goddard v. Monitor Mutual Fire Ins. Co., 108 Mass. 56, 11 Am.Rep. 307, 309; Grady v. Concordia Fire Ins. Co. of Milwaukee, 267 N.Y. 177, 196 N.E. 16; Miller v. American Eagle Fire Ins. Co., 253 N.Y. 64, 170 N.E. 495; Rice v. Norwich Union Ins. Co., 128 N.J.L. 314, 25 A.2d 907; United Pacific Ins. Co. v. Northwestern Nat. Ins. Co., 10 Cir., 185

F.2d 443. In some of these cases it is not clear whether the defendant's agent was a general agent, and in others it appears that such was not the case.

But be that as it may, in this jurisdiction we have long followed a contrary view. In Inter-Ocean Casualty Co. v. Ervin, 229 Ala. 312, 313, 156 So. 844, 845, this court, speaking through the late Mr. Justice Bouldin to a somewhat analogous question, declared: "It is fully settled in this jurisdiction that misrepresentations resulting solely from the act or oversight of the soliciting agent·taking the application, without the knowledge of the insured or beneficiary, are not available to the insurer, although the issuing authority acts upon the application as presented, and without knowledge of the misfeasance of its agent. * * *"

Several of our prior decisions are cited in support of this principle, most of them dealing with life insurance, but one of them is Williamson v. New Orleans Ins. Ass'n, 84 Ala. 106, 108, 4 So. 36, 38. In speaking to the principle, it was there said: "The answers to the questions contained in the application for insurance are made a part of the contract, and express warranties of their truth. Notwithstanding this, if the agent of the insured made true statements of the condition of the title and ownership of the property to the agent of the defendant, at the time the application for insurance and the answers were made, and the agent of the defendant nevertheless wrote the answer as appears in the application, thus substituting an answer which was untrue, the answer is the statement of the agent, and not of the assured. In such case the defendant will not be permitted to take advantage of the wrongful act, or misconstruction, or mistake, of its own agent, and avoid the policy, the insured being without fault. [Alabama] · Gold Life Ins. Co. v. Garner [77 Ala. 210]." See also Royal Exchange Assur. of London v. Almon, 202 Ala. 374, 80 So. 456; American Equitable Assur. Co. v. Powderly Coal & Lumber Co., 225 Ala. 208, 142 So. 37; Dixie Fire Ins. Co. v. Flippo, 236 Ala. 116, 181 So. 117.

A case presenting a striking analogue and nearest in point is Alabama Mutual Fire Ins. Co. v. Minchener, 133 Ala. 632, 32 So. 225, where this court held in effect that when an insured, who has contracted for insurance, informs the agent of the insurance company, who is authorized to issue the policy (the general agent) of his desire to take out a policy of fire insurance upon a certain building and points the property out to such agent and the agent, in describing the house insured in the policy, misdescribes the property so as to make it uncertain what property is covered, it is competent in an action upon the policy for the insured to testify to the anterior or contemporaneous transaction and that he did in fact point out to the agent the house that was burned as the one which it was understood between the plaintiff and the agent was the property to be insured. This case is cited with approval in Exchange Underwriters' Agency v. Bates, 195 Ala. 161, 69 So. 956. We quote the following pertinent language from the opinion in Alabama Mutual Fire Ins. Co. v. Minchener, supra, 133 Ala. 635, 32 So. 226: "* * * 'a party who deals with an agent, through whom he applies for and obtains a policy, has a right to presume that such material facts as are made known to him, are known to the principal, and when policies are issued with a full knowledge of such facts, the insured is to suffer no prejudice, nor are the insurers to gain any advantage by insisting upon conditions which it would be dishonest to enforce.'"

Sustentive from other jurisdictions are Storment v. Hartford Fire Ins. Co., 215 Ill.App. 287; American Ins. Co. v. Egyptian Lodge, 128 Ill.App. 161; Moliere v. Pennsylvania Fire Ins. Co., 5 Rawle, Pa. 342, 28 Am.Dec. 675; Hughes v. Mercantile Mut. Ins. Co., 55 N.Y. 265, 14 Am.Rep. 254; Pacific Mutual Life Ins. Co. v. Snowden, 8 Cir., 58 F. 342; New York Accident Ins. Co. v. Clayton, 8 Cir., 59 F. 559.

These last cited cases relate to the same general principle and following is an apt quotation from Storment v. Hartford Fire Ins. Co., supra, 215 Ill.App. 293: "* * * The evidence shows that the agent * * * prepared the description contained in the policy without any suggestion, so far as the record discloses, from the appellants or their agent, and this being true, we are of

the opinion that appellee ought not be allowed to take advantage of its own mistake in the preparation and description contained in the policy * * *."

Also pertinent is this quotation from Pacific Mutual Life Ins. Co. v. Snowden, supra, 58 F. 345–346: " 'By the interested or officious zeal of the agents employed by the insurance companies, in the wish to outbid each other and procure customers, they not unfrequently mislead the insured by a false or erroneous statement of what the application should contain, or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy. The better opinion seems to be that when this course is pursued the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers.' "

Concluding the discussion relative to this question of the binding effect of the conduct of the general agent in such instances, we would like to thus summarize: It is a matter of common knowledge that such insurance companies have many varied forms for the classification of risks. These classifications are based upon such matters as the nature of the property insured, its size, location, type of business, occupancy, and uses. Many of these matters regarding the risks are within the peculiar knowledge of the insurer and where, as here, the insurer's general agent, with authority to prepare and countersign contracts and bind the company, knew or was informed as to all matters relative to the risk, and by that agent's own choice classified the risk as one less than the company might have wished its agent to choose, all being without any fraud, concealment, knowledge or participation of the insured, the company should be held bound by this act of its general agent.

It is contended by defendant that to allow plaintiff to show what occurred between himself and the defendant's general agent prior to the issuance of the policy in suit would violate the rule forbidding the altering or varying of the terms of the written contract by parol, citing such cases as Tutton v. Liverpool & London Globe Ins. Co., supra, 237 Ala. 230, 186 So. 551. We do not regard these cases as having application to the situation here presented. The evidence sought to be introduced in such cases by the plaintiff would have had the effect of writing into the insurance contract terms which were clearly not incorporated therein. Here, however, we are dealing with the description of the property to be insured and which description, according to the evidence for the plaintiff, was made up and adopted by the insurer's agent, not by the insured, and without any suggestion on the part of the insured. What we have shown hereinabove clearly distinguishes the two theories. In Royal Exchange Assur. of London v. Almon, supra, dealing with a somewhat analogous situation as that here considered, we held that statements made by the plaintiff to the general agent of the insurer pending negotiations, intending to prove disclosures made by plaintiff to the general agent respecting plaintiff's interest in and relation to the property sought to be insured, were admissible to bind the insurer. See Moliere v. Pennsylvania Fire Ins. Co., supra.

It is also insisted by defendant that the policy was voided because of a provision in it that the "company shall not be liable for loss occurring * * * while the hazard is increased by any means within the control or knowledge of the insured"; that the use of the building as a garage and dwelling was an additional hazard; that during such use coverage was merely suspended and the fire having occurred by reason of such use, recovery would be precluded. What we have said hereinabove is complete answer to this contention. There was no increase in hazard in the use of the property insured. It was subject to the same use when the fire occurred as it was when the insurer issued the policy and chose to describe the building as it did.

The conclusion we have reached likewise suffices to illustrate that the court correctly refused Charges C, E and K predicating nonrecovery if the property was occupied as or subject to the multiple use stated, as were Charges D and F predi-

cating nonrecovery on any increase in hazard by reason of the fire having started in the body shop of the building.

█ Charges 3, 4, and 10 were properly refused, one sufficient reason being that the charges might have had the effect of misleading the jury to construe them as charging that the testimony of the competing agent Snow as to his conversation with the insurer's agent or the act of insurer's agent in so describing the property should be disregarded.

█ As regards Charges 1 and 5 to the effect that the plaintiff was not entitled to recover on account of waiver or estoppel, it is sufficient to say that they were refused without prejudice, since the case was not tried on this theory and the court in its oral charge · sufficiently charged the jury with respect thereto.

█ The oral charge of the court excepted to, made the basis of assignment of error 44, was advantageous to the defendant and therefore error cannot be predicated of its giving. This phase of the oral charge restricted recovery to the simple issue that if the jury determined from the evidence that the building was a church, recovery should be for the plaintiff, whereas if such was not the case, recovery should be denied. We regard the instruction as inept, but without prejudice to the defendant.

█ Nor can error be rested on the exception to that part of the court's oral charge instructing the jury as to the time the interest should start in event recovery be awarded. Without considering the correctness vel non of the entire statement, the exception is too indefinite to apprise the court as to the point taken. The objection might have been intended to go either to the part of the charge relating to the principal amount of recovery, as well as to the date the interest thereon would begin. In order to place the primary court in error, the exception to the oral charge must be definite and specific. Kirby v. State, 151 Ala. 66, 44 So. 38; Birmingham Ry., Light & Power Co. v. Jackson, 198 Ala. 378, 382, 73 So. 627. The initial portion of the charge relating to the prin-

cipal amount of recovery was concededly correct, so the exception must fail. McGough Bakeries Corp. v. Reynolds, 250 Ala. 592, 598, 35 So.2d 332; United States Fire Ins. Co. v. Smith, 231 Ala. 169(17), 164 So. 70, 103 A.L.R. 1468.

Likewise untenable is the argument that the court erred in sustaining the demurrer to the defendant's plea in abatement rested on the alleged failure of the parties to arbitrate the loss. The policy provision as regards arbitration required as predicate a written demand for arbitration in case the parties should fail to agree and the plea fails to allege that there was any such demand. The cited cases, Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180; McCullough v. Mill Owners Mut. Fire Ins. Co., 243 Ala. 67, 8 So.2d 404, are inapposite.

What we have said, we think, sufficiently disposes of the other assignments of error and results in an affirmance of the judgment.

Affirmed.

LIVINGSTON, C. J., and FOSTER and GOODWYN, JJ., concur.

On Rehearing

SIMPSON, Justice.

With respect to the plea in abatement, counsel for appellant argues we have departed from the holding in McCullough v. Mill Owners Mutual Fire Ins. Co., 243 Ala. 67, 8 So.2d 404, which in effect held that a good plea in abatement need not allege a demand was made for arbitration. We make this brief response to 'demonstrate the difference in the two cases.

The arbitration provision of the policy in McCullough's case was not the same as the one here concerned. McCullough's policy contained no provision requiring a written demand for arbitration after disagreement, its requisite for arbitration being that there should be a disagreement as to the amount of loss. So viewed, it was properly held that resort to arbitration after such disagreement was the precedent averment for a proper plea in abatement without alleging any demand.

The policy in the instant case as regards arbitration, however, required as predicate to invoke its provisions that there not only be a failure on the part of the parties to agree as to the actual cash value or the amount of the loss, but also in such event written demand for arbitration. The pertinent language of the policy is as follows: "In case the insured and this company *shall fail to agree* as to the actual cash value or the amount of the loss, *then, on the written demand* of either, * * *" arbitration to settle the disagreement should be had. Hence the difference in the two cases.

 It quite clearly appears the plea lacks sufficient allegations within the general rule of the authorities; that is, the plea makes no showing that the conditions requiring arbitration ever transpired—viz., a failure to agree and a written demand thereafter to arbitrate—so as to make available such plea in abatement. The pleader was content merely to aver that no agreement as to amount of loss was made and no arbitration was had. This does not suffice to meet the provisions of the policy. The arbitration clause was conditioned: (1) on a failure to agree, which of necessity presupposes that there had been an effort made to agree and a disagreement ensuing therefrom, since otherwise there would be no purpose to arbitrate; that provision presupposes an actual, bona fide disagreement as to the amount of loss, Insurance Co. of North America v. Baker, 84 Colo. 53, 268 P. 585, for, "under provisions thus conditioned, unless there has been such a disagreement, it is not necessary to resort to an appraisement or arbitration before suing on the policy", 45 C.J.S., Insurance, § 1112, page 1355; (2) a written demand in event of such failure to agree, in which case "it is generally held that [such] a provision of a property insurance policy * * * does

not require an appraisal as a condition precedent to a recovery on a policy unless a written request has been made by one of the parties", 29 Am.Jur. 929, § 1244.

We think the foregoing clearly demonstrates the demurrer to the plea was properly sustained.

As regards the other propositions argued on this rehearing, we are not in agreement, but are content to rest on our original decision.

Opinion extended and rehearing denied.

LIVINGSTON, C. J., and FOSTER and GOODWYN, JJ., concur.